673 A.2d 357

COMMONWEALTH of Pennsylvania, Appellee,

v.

Randy THOMSON, Appellant.

Superior Court of Pennsylvania.

Submitted Dec. 18, 1995.

Filed March 13, 1996.

160

Wayne S. Lipecky, Assistant Public Defender, Ambridge, for appellant.

Ahmed T. Aziz, Assistant District Attorney, Aliquippa, for Commonwealth, appellee.

Before BECK, POPOVICH and BROSKY, JJ.

POPOVICH, Judge:

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Beaver County, following appellant's conviction on one count of rape and two counts of indecent assault. Appellant contends that the lower court improperly denied appellant's request for a new trial because the evidence was insufficient as a matter of law to sustain his conviction for rape, and there was after-discovered evidence relevant to the victim's capability to consent. We affirm.

■ Appellant first argues that the evidence presented was insufficient to sustain his conviction for rape.[1] "In reviewing the sufficiency of the evidence, we view all the evidence admitted at trial in the light most favorable to the Commonwealth, as verdict winner, to see whether there is sufficient evidence to enable the jury to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Thomas*, 522 Pa. 256, 561 A.2d 699, 702 (1989) (citations omitted). Although a conviction must be based on "more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty." *Commonwealth v. Badman*, 398 Pa.Super. 315, 580 A.2d 1367, 1372 (1990) (citation omitted).

Using this standard, the evidence adduced at trial and at subsequent hearings, together with all reasonable inferences in favor of the Commonwealth, discloses the following: On December 9, 1993, the victim, a twenty-two year old female, was baby sitting for appellant and his girlfriend. After appellant and his girlfriend returned home, appellant offered to give the victim a ride to her house. Despite his girlfriend's objec-

---

1. Appellant does not dispute the sufficiency of the evidence in regard to his conviction on two counts of indecent assault.

tion, appellant and the victim got into the vehicle. During the drive to the victim's house, appellant, pretending that his car was overheating, made a detour and parked his vehicle at a baseball field. Appellant and the victim then had sexual intercourse in the front seat of the vehicle. While they were engaging in sex, appellant's girlfriend arrived on the scene. The girlfriend went to the the victim's house and informed the victim's mother that her daughter was having sex with appellant. The victim's mother lodged a complaint with the police, resulting in appellant's arrest.

At trial, the Commonwealth produced a forensic psychiatrist who testified that the victim was incapable of consenting to sexual intercourse because she was mildly mentally retarded.[2] The psychiatrist further testified that the victim's retardation was of the type noticeable by a lay person. There was no rebuttal evidence by the defense as to the victim's incapability to consent.

After a non-jury trial, appellant was found guilty of one count of rape and two counts of indecent assault. The court specifically found that the victim, due to her mental retardation, was incapable of consenting to sexual intercourse.

At the sentencing hearing which was held on November 30, 1994, appellant discovered that the victim was pregnant. It was undisputed that appellant was not the individual who impregnated her. After discovering that the victim was pregnant by someone other than himself, and, thus, clearly had sexual intercourse with at least one other male, appellant concluded that she was capable of consenting to sexual intercourse. The lower court rejected appellant's argument, and sentenced him to three to six years for rape and six to twelve

---

2. As the expert explained during her testimony, the American Psychiatric Association recognizes that mildly mentally retarded individuals fall between those who are moderately mentally retarded and those who are dull normal. N.T. 6/29/94 p.p. 22–23. Individuals who are moderately mentally retarded generally are institutionalized because they are profoundly impaired, while individuals who are in the dull normal range generally are able to care for themselves. N.T. 6/29/94 p.p. 22–23. Individuals who are mildly mentally retarded are able to perform simple tasks, but require assistance with more difficult tasks and generally are unable to "hold down jobs." N.T. 6/29/94 p. 43.

months on each of the indecent assault convictions, sentences to run concurrently. Appellant filed post-sentence motions with the lower court. The motions were denied, and this appeal followed.

Appellant was convicted of rape under 18 Pa.C.S.A. § 3121(4). In regard to this conviction, appellant argues that the Commonwealth failed to prove that the victim was incapable of consenting to sexual intercourse or, in the alternative, the Commonwealth failed to prove that appellant knowingly, intentionally, or recklessly took advantage of or had knowledge of the victim's mental deficiencies. While we agree with appellant that these are material elements of the offense which the Commonwealth needed to prove in order for the lower court to find appellant guilty of rape under section 3121, subsection 4, we disagree with his assertion that sufficient evidence was not presented to sustain the Commonwealth's burden of proof.

■ Under section 3121, subsection 4, "[a] person commits a felony of the first degree when he engages in sexual intercourse with another person not his spouse: who is so mentally deranged or deficient that such person is incapable of consent." While the subsection of rape dealing with incompetents does not state that a person must know of the victim's condition, it is nevertheless an element of proof in the Commonwealth's case to prove mens rea. *See Commonwealth v. Carter,* 274 Pa.Super. 538, 418 A.2d 537 (1980).

> Since § 3121 has no intent provision and since the victim's mental condition is a material element of the offense, the Commonwealth, under § 302(c) [of the Crimes Code], must prove beyond a reasonable doubt that the ... [appellant] acted at least recklessly with regard to every material element of the section, including that the victim was so mentally deranged or deficient that she was incapable of consent.

*Carter,* 418 A.2d at 539. Accordingly, the Commonwealth must prove that appellant acted intentionally, knowingly or

recklessly as to the victim's mental deficiency. *See Carter, supra.*

■ We find that there was sufficient evidence supporting the finding that the victim was incapable of consenting to sexual intercourse because of her mental deficiency, and that appellant acted at least recklessly with regard to the victim's mental deficiency.

The uncontradicted medical testimony offered at trial by the Commonwealth was that the victim was incapable of consenting to sexual intercourse. The forensic psychiatrist, who both parties stipulated was an expert in her field, testified that she conducted a formal mental status examination of the victim. Based upon this examination, it was her opinion that with a reasonable degree of medical certainty the victim was incapable of consenting to sexual intercourse. The expert testified that she behaved in a manner similar to that of a child, that she was unable to maintain herself in a mature fashion and that she had limitations on her daily life. The expert further testified that when she was questioned about her birth date, about the identity of the current President of the United States and about the reason for the difference between her last name and her mother's last name, the victim was unable to provide correct answers. When she was asked if she knew the name of the current President's wife, the victim replied "No, I've never met his wife." The expert also testified that the victim would be able to do simple chores around the house, including cooking and cleaning, but that she would be unable to go to the store, for example, because she was unable to understand the concept of money. Based on these factors, and numerous others, the expert concluded that the victim did not have good judgment, was highly influenced by people and was unable to understand the consequences of her actions. Accordingly, the expert opined that the victim was mildly mentally retarded with an intelligence quotient (I.Q.) of approximately 58 and was incapable of consenting to sexual intercourse.

Based on the expert's testimony, which the lower court found to be credible, we find that there was sufficient evidence

to support the finding that the victim was incapable of consenting to sexual intercourse.

■ Next, we must determine whether there was sufficient evidence to find that appellant acted at least recklessly with regard to the victim's mental deficiency. Again, the Commonwealth offered the unrebutted testimony of the forensic psychiatrist to prove that appellant had the requisite mental state.

At the trial, the expert testified that it would be readily apparent to a lay person, someone not trained as a psychiatrist, that the victim was mentally retarded. The expert testified that the victim's limitations would be readily discovered by someone who had only limited contact with her. Appellant admits that he spent a great deal of time with the victim and, thus, he would have had the opportunity to observe her limitations.

In addition, we note that the lower court had the opportunity to observe the victim while she testified, and, thus, was in a far better position to determine whether her mental deficiency was readily apparent to a lay person. We further note that the victim's mother testified that she had informed the appellant and his girlfriend that the victim was mentally handicapped.

"This is not a situation in which a man met a woman under normal circumstances with no hint that the woman may [have been] unable to consent, only to find later that she was in fact incompetent." *Carter*, 418 A.2d at 540.

The victim's mother's testimony that she informed appellant of her daughter's mental deficiencies demonstrates that appellant had actual knowledge of the victim's condition. In addition, the remainder of the Commonwealth's evidence shows circumstances which the trier of fact could find to be known by appellant which created a substantial risk that the victim was of such mental infirmity as to render her incapable of consenting to sexual intercourse.

■ Appellant's next contention is that he is entitled to a new trial on the basis of after-discovered evidence. Specifically, appellant argues that if the Commonwealth's expert would have known during the trial that the victim was pregnant by someone other than appellant, and, thus, she was engaging in sexual relations with at least one other individual, the expert would not have concluded that the victim was incapable of consenting to sexual intercourse. We hold that the motion was denied properly since appellant's new evidence does not meet the Pennsylvania standard for after-discovered evidence.

■ After-discovered evidence is a proper basis for a new trial only if:

(1) it has been discovered after the trial and could not have been obtained at or prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely for impeaching credibility of a witness; and (4) is of such nature and character that a different verdict will likely result if a new trial is granted.

*Commonwealth v. Moore*, 534 Pa. 527, 633 A.2d 1119, 1135–1136 (1993) (citations omitted).

We find that appellant has arguably satisfied prongs one, two and three of the aforementioned test. However, appellant has failed to demonstrate that the after-discovered evidence would likely result in a different verdict if a new trial were granted.

As discussed previously, the rape section and subsection at issue in this case provides the following: "A person commits a felony of the first degree when he engages in sexual intercourse with another person not his spouse: who is so mentally deranged or deficient that such person is incapable of consent." 18 Pa.C.S.A. § 3121(4). The evil or harm that is sought to be prevented by this provision regarding mentally deranged people is not sexual intercourse, but sexual intercourse with people who are incapable of consenting to sexual intercourse. *Commonwealth v. Carter*, 274 Pa.Super. 538, 418 A.2d 537, 539 (1980).

Under section 3121, subsection 4, the Commonwealth must prove beyond a reasonable doubt that the victim was so mentally deranged or deficient that she was incapable of consenting to sexual intercourse. *See Carter, supra.* Here, the Commonwealth fulfilled this burden through the unrebutted testimony of a forensic psychiatrist. The expert testified that based upon a formal mental status examination which she had conducted, it was her opinion with a reasonable degree of medical certainty that the victim was incapable of consenting to sexual intercourse. The expert described the various factors which she considered, including orientation, memory, judgement, ability to do calculations, and ability to comprehend abstractions, to arrive at her conclusion. As indicated previously, the expert further testified that the victim behaved in a manner similar to that of a child, she was unable to maintain herself in a mature fashion and she had limitations on her daily life. In fact, the expert testified that the "[victim's] judgement was impaired in a very rude elementary level." N.T. 6/29/94 p. 15.

We fail to see how the knowledge that the victim was impregnated by someone other than appellant would change the expert's opinion. A person is able to become pregnant without having the capacity to give consent to sexual intercourse. That is, consent is not necessary to become pregnant. The fact that the victim had sexual intercourse with another individual does not render her capable of giving consent during that encounter nor during the encounter with appellant.

Having found that the after-discovered evidence offered by appellant is not of a nature and character that would likely result in a different verdict if a new trial were granted, we find that the lower court properly denied appellant's request for a new trial on this basis.

For all of the foregoing reasons, we affirm the lower court's judgment of sentence.

Affirmed.