J-A34040-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JOSEPH T. LOMBARDO | |
| Appellant | No. 815 MDA 2014 |

Appeal from the Judgment of Sentence entered March 28, 2014
In the Court of Common Pleas of Berks County
Criminal Division at No: CP-06-CR-0001107-2013

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN, and STABILE, JJ.

MEMORANDUM BY STABILE, J.:                  **FILED FEBRUARY 24, 2015**

Joseph Lombardo was convicted of having sexual contact with an adult female who lacked the ability to consent because of a mental disability.  On appeal, Lombardo challenges the sufficiency and weight of evidence of the victim's mental defect, as well as his awareness of it.  We affirm.

J.K., the victim, is a 49-year-old woman who suffers from a mild mental disability.  She graduated from John Paul II Center for Special Learning, a special-needs school in 1985, and worked for four years in a sheltered workshop to gain the skills necessary to hold a job.  J.K. is able to cook for herself and use a computer.  She also works as a cashier at a fast-food restaurant.  J.K., however, has never lived alone, and cannot drive.

J.K. has been active in the Special Olympics her whole life, and bowls with a group of individuals with mental disabilities on Saturdays.  Initially,

J.K.'s mother drove her to bowling, but eventually the mother hired Appellant and paid him $20.00 per week to transport J.K. Appellant transported J.K. and other persons with mental disabilities every Saturday from 2001 until he was charged in this case.

On one Saturday when he was transporting J.K. to bowling, Appellant allowed J.K. to use his bathroom at his house. Appellant called J.K. into the upstairs bathroom and when J.K. went in, Appellant's pants were down and his penis was exposed. N.T. Trial, 11/19-20/13, at 95-96. Appellant asked J.K. to perform oral sex on him. J.K. told Appellant it "really wasn't the time" to do that because they had to go bowling. *Id.* at 97-98. Appellant persisted in asking J.K. to perform oral sex, which she did until he ejaculated. *Id.*

On another Saturday before bowling, Appellant had J.K. perform oral sex on him while they were in his car. *Id.* at 101-03. Appellant whispered to J.K. not to tell anyone. *Id.*

On September 8, 2012, J.K. and her mother were traveling through West Reading. *Id.* at 103-04, 131. J.K. pointed out where Appellant lived, and told her mother that Appellant had placed his penis in her mouth inside his home. *Id.* at 131. J.K.'s mother explained that this action is called oral sex, *id.,* and she later contacted police, who arranged for J.K. to participate in a forensic interview. Police interviewed Appellant, too. During his interview, Appellant stated he worked for Prospectus Berco, an organization that provides services for the mentally disabled, and he transported people

to Special Olympics on the side. *Id.* at 152-53, 171. When Detective Michael Fick told Appellant he was investigating a sexual assault, Appellant claimed any contact was consensual. *Id.* at 153-54. Appellant admitted that J.K. performed oral sex on him twice, but denied having any other sexual contact with her. *Id.* He told the Detective that he "always thought he wanted to have a relationship with a special needs person." *Id.* at 154. At the end of the interview, Detective Fick arrested Appellant. *Id.* at 161-62.

Based on the above evidence, the Commonwealth charged Appellant with rape, involuntary deviate sexual intercourse (IDSI), and indecent assault (all with a person who cannot consent because of a mental disability), and indecent exposure.[1]

At trial, the Commonwealth presented the testimony of Dr. Alison Hill, a licensed psychologist and counselor. Her experience includes conducting psychological, psychosexual, and emotional evaluations. N.T. Trial, 11/19-20/13, at 166-72. However, Dr. Hill is not a clinical or forensic psychologist, and she had never before performed a competency evaluation for use in a court case. *Id.* at 175-78. Dr. Hill opined that J.K. cannot consent to sex. *Id.* at 180. Dr. Hill explained that, according to the Diagnostic and Statistical Manual IV (DSM-IV), J.K.'s Intelligence Quotient (IQ) of 64 places

---

[1] 18 Pa.C.S.A. §§ 3121(a)(5), 3123(a)(5), 3126(a)(6), and 3127(a), respectively.

her in the "mild mental disability" range. *Id.* at 184-85. Dr. Hill interviewed J.K. for 90 minutes and used the Wechsler Abbreviated Scale of Intelligence (WASI) test and the Wide Range Achievement Test to measure her functioning. *Id.* at 184-85, 195. On cross-examination, Dr. Hill conceded that she did not use the most recent version (version IV) of the full Wechsler Adult Intelligence Scale (WAIS-IV), which includes fifteen subtests instead of the WASI's four. *Id.* at 192, 209. Dr. Hill did not want to fatigue J.K. by using the longer test. *Id.* Dr. Hill also did not use the most recent version of the Wide Range Achievement Test, but claimed this did not affect her conclusion. *Id.* Dr. Hill noted that J.K. cannot live alone, cannot drive, takes paratransit to work, and needed four years of training to learn how to be a cashier. *Id.* at 186-87. Finally, Dr. Hill noted that J.K. cannot understand certain things that are apparent to persons of normal intelligence. For example, J.K. was unable to connect the menstrual cycle to pregnancy. *Id.* at 198-99. Further, she did not understand that a woman cannot become pregnant from oral sex. *Id.* at 198-99.

Appellant's expert, Dr. Frank M. Dattilio, offered a contrasting opinion. Dr. Dattilio is a certified clinical and forensic psychologist, and has many years of experience evaluating mentally disabled and mentally ill individuals. *Id.* at 225-27. He has also testified hundreds of times as an expert. *Id.* Dr. Dattilio interviewed J.K. for four hours, and reviewed her forensic interview prepared for this case and other documents. *Id.* at 232-35. Dr. Dattilio used the WAIS-IV, which he characterized as "the most

frequently and commonly used assessment of intelligence throughout the world." *Id.* at 238-39. According to Dr. Dattilio's testing, J.K.'s IQ is 68, which places her closer to borderline intelligence than an IQ of 64, which is in the mildly mentally disabled range. *Id.* at 239-40. Dr. Dattilio disagreed with Dr. Hill's claim that her tested IQ of 64 was within the margin of error, because she used an obsolete, stale test. *Id.* at 262. In sum, Dr. Dattilio opined that J.K. is not incapacitated to the point that she did not know that she had a right to refuse Appellant's requests for oral sex. *Id.* at 244-45.

After weighing the above testimony, the jury convicted Appellant of all charges. On March 27, 2014, the trial court sentenced Appellant to 4 to 8 years in prison, followed by 12 years of probation. Appellant timely filed[2] a post-sentence motion challenging the weight and sufficiency of the evidence. The trial court denied the motion, and this appeal followed.

---

[2] Post-sentence motions must be filed within ten days of "imposition of sentence." Pa.R.Crim.P. 720(A). The trial court imposed sentence in this case on March 27, 2014, even though the clerk of courts did not docket the written sentencing order until the next day. *See Commonwealth v. Green*, 862 A.2d 613, 617-18 (Pa. Super. 2004) (*en banc*) (holding imposition of sentence occurs when it is announced in open court, not when the written sentencing order is docketed). Appellant filed his post-sentence motion on April 7, 2014, eleven days after imposition of sentence. The motion was nevertheless timely, because April 6, 2014 was a Sunday. *See* Pa.R.Crim.P. 101(C); 1 Pa.C.S.A. § 1908.

On appeal, Appellant challenges the sufficiency of the evidence of rape, and the weight of the evidence of rape and IDSI.[3]  Appellant correctly acknowledges that challenges to evidentiary sufficiency and weight are distinct claims requiring distinct analyses.   For his sufficiency challenge, Appellant contends the Commonwealth failed to provide sufficient evidence that (1) J.K. could not consent to sex, and (2) Appellant recklessly disregarded the fact that J.K. could not consent to sex.  In his challenge to the weight of the evidence, Appellant argues the greater weight of the evidence shows J.K. was able to consent to sex.  For ease of discussion, we will address the sufficiency challenge first.

A challenge to the sufficiency of the evidence is a question of law, for which "our standard of review is *de novo*."  **Commonwealth v. Rushing**, 99 A.3d 416, 420 (Pa. 2014).  "However, our scope of review is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner."  **Id.** at 420-21.

> Our Supreme Court has instructed: [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined

_____

[3] Appellant does not challenge the sufficiency of evidence of IDSI.  **See** Appellant's Brief at 6.  Nor does he challenge his conviction of indecent exposure.

circumstances. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Orie*, 88 A.3d 983, 1014 (Pa. Super. 2014) (quoting *Commonwealth v. Williams*, 73 A.3d 609, 617 (Pa. Super. 2013)).

As charged in this case, a person commits rape when "the person engages in sexual intercourse with a complainant . . . [w]ho suffers from a mental disability which renders the complainant incapable of consent." 18 Pa.C.S.A. § 3121(a)(5). Sexual intercourse, "[i]n addition to its ordinary meaning, includes intercourse *per os* or *per anus*, with some penetration however slight; emission is not required. *Id.* § 3101.

Section 3121(a)(5) does not state whether a defendant must know that the victim has a mental disability rendering him or her incapable of consent. The Commonwealth nevertheless must prove *mens rea*. *Commonwealth v. Thomson*, 673 A.2d 357, 359 (Pa. Super. 1996). The victim's mental state is a material element of the crimes. Therefore, under § 302 of the Crimes Code, the Commonwealth must prove, at a minimum, the defendant recklessly disregarded the existence of the victim's mental disability. *Id.* (quoting *Commonwealth v. Carter*, 418 A.2d 537, 539 (Pa. Super. 1980)). In other words, the Commonwealth must prove the defendant disregarded a substantial and unjustifiable risk that the victim suffers from a mental disability rendering him or her incapable of consenting to sexual intercourse. *See id.*; 18 Pa.C.S.A. § 302(b)(3).

Applying the above standard, we reject Appellant's sufficiency challenge. First, Dr. Hill testified J.K. cannot consent to sex because of her mild mental disability. She tested J.K.'s IQ at 64. J.K. cannot live alone or drive. Appellant argues his expert, Dr. Dattilio, was more credible, and that Dr. Hill used outdated or obsolete tests to measure J.K.'s functioning. Those arguments concern the weight of the evidence—not its sufficiency. In a sufficiency challenge, we must accept all evidence as true and view it in a light most favorable to the Commonwealth. *See Orie*, 88 A.3d at 1014. Thus, we must accept as true Dr. Hill's testimony, and we cannot consider Appellant's arguments regarding the efficacy of testing of J.K. or Dr. Dattilio's opinion that J.K. could refuse to consent to sex.

Second, the Commonwealth presented sufficient evidence that Appellant recklessly disregarded the fact that, because of her mental disability, J.K. cannot consent to sex. Appellant drove J.K. to bowling for Special Olympics every week. Tellingly, he told Detective Fick he always wanted to have a relationship with a special needs person. These facts are sufficient to show, at minimum, Appellant recklessly disregarded J.K.'s inability to consent to sex. Viewed in a light most favorable to the Commonwealth, Appellant's concession to Detective Fick shows Appellant was aware that he was dealing with special needs people, *i.e.*, persons with mental disabilities. Appellant's statement reflects at least a reckless disregard that J.K. suffers from a mental disability rendering her incapable of consenting. We again reject Appellant's reliance on evidence favorable to

him.   Such an argument concerns the weight of the evidence, not its sufficiency.  ***See id.***

We now turn to Appellant's contention that the guilty verdicts for rape and IDSI are against the weight of the evidence.  "A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice."  ***Id.*** (quoting ***Commonwealth v. Lyons***, 79 A.3d 1053, 1067 (Pa. 2013)).

> A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion.  Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> . . . .
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court[.]  Appellate review of a weight claim **is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence**.

***Id.*** (quoting ***Commonwealth v. Clay***, 64 A.3d 1049, 1054-55 (Pa. 2013) (emphasis in original)).

In its opinion, the trial court explained its reasoning for denying a new trial as follows:

> After reviewing the record, the verdict of the jury does not come as a shock to this [c]ourt.   [Appellant] claims Dr. Hill's evaluations are substantially compromised by her failure to

adhere to [forensic psychology] guidelines in a manner consistent with the standard practices, focusing specifically on the fact that Dr. Hill's tests are outdated and obsolete. However, the evidence presented at trial was not contrary to the verdicts of the jury. It appears that Dr. Hill based her testimony upon accepted counseling psychology concepts concerning the victim's ability to consent. Moreover, the IQ assessed by Dr. Hill and the IQ assessed by Dr. Dattilio were within the same margin of error. Dr. Hill explained at trial why she chose to use the original version of the Wechsler test[4] and the Wide Range Achievement Test. Although a newer version of the Wechsler test is available, Dr. Hill prefers in her practice to utilize shorter tests so as to avoid tiring the victim. Furthermore, Dr. Hill utilized the original reading section of the Wide Range Achievement Test merely for screening purposes and nothing more. Although [Appellant] claims Dr. Hill made no attempt to utilize the Vineland Adaptive Behavior Scales, it was confirmed at trial that Dr. Dattilio was unable to administer the Vineland Adaptive Behavior Scales.

The jury was free to accept or reject Dr. Hill's testimony relating to the victim's mental disability and inability to consent. Although the testimony offered by the [Appellant's] expert (Dr. Dattilio) may have been sufficient to establish the victim was capable of consent, this testimony must be weighed with the differing testimony offered by the Commonwealth's expert witness (Dr. Hill). And when so considered[,] it became a matter of credibility for the trier of the facts to resolve. . . . Based on the evidence provided at trial, this [c]ourt is bound by findings that result from resolutions of credibility and conflicting [psychological] testimony. The jury found Dr. Hill's testimony to be more credible[,] and the mere fact that Dr. Hill's testimony was contradicted will not take the question of its credibility from the jury. Based on the totality of the credible evidence presented at trial by Dr. Hill, this [c]ourt is well within its discretion to reject the [Appellant's] argument that the victim

---

[4] The trial court is mistaken. Dr. Hill testified she used that the Wechsler Abbreviated Scale of Intelligence test, not the original version of the full Wechsler Adult Intelligence Scale test. *See* N.T. Trial, 11/19-20/13, at 179-80.

was capable of consent. Thus, the verdicts of this [c]ourt were not contrary to the weight of the evidence presented at trial.

Trial Court Rule 1925(a) Opinion, 1/16/14, at 7-8.

The trial court did not abuse its discretion in denying a new trial. Here, the jury had the opportunity to hear the two experts' testimony.[5] After weighing and evaluating the evidence, the trial court determined a new trial was not warranted. Appellant cannot show that this decision was manifestly unreasonable; a misapplication of the law; or the result of bias, ill-will, or prejudice. Therefore, his second claim fails.

Having rejected Appellant's assignments of error, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/24/2015

---

[5] On appeal, Appellant also argues the trial court abused its discretion in allowing Dr. Hill to testify as an expert. Appellant's Brief at 9-10. This argument is waived for several reasons. Appellant failed to object at trial, thus not preserving the issue. *See* Pa.R.E.103(a). Appellant did not include this claim in his concise statement of errors complained of on appeal, or as a separate question presented or argument in his brief. *See* Pa.R.A.P. 1925, 2116(a), 2119(a).

- 11 -