J-A22002-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                                :        PENNSYLVANIA
                                :
           v.                   :
                                :
                                :
TAYLOR ALFRED ROSSI         :
                                :
        Appellant       :     No. 1979 EDA 2018

Appeal from the Judgment of Sentence Entered June 20, 2018
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0003595-2017

BEFORE:   MURRAY, J., STRASSBURGER, J.*, and PELLEGRINI, J.*

MEMORANDUM BY MURRAY, J.:         **FILED OCTOBER 04, 2019**

Taylor Alfred Rossi (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of rape of an unconscious person, sexual assault, and indecent assault of an unconscious person.[1]  Upon review, we affirm.

On April 4, 2017, the Commonwealth filed a criminal complaint alleging that Appellant committed the above crimes while attending a New Year's party from December 31, 2016-January 1, 2017.  Prior to trial, Appellant filed a motion *in limine* seeking to introduce evidence "regarding the sexually explicit dance that occurred in front of him" between his girlfriend and the victim,

_____

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3121, 3124.1, and 3126.

which occurred "only a couple hours before" the alleged sexual assault. ***See*** Appellant's Brief at 14. Appellant argued that the evidence "impacted the credibility" of the victim as to "whether or not the sexual encounter with Appellant was consensual." ***Id.*** The trial court denied the motion based on 18 Pa.C.S.A. § 3104 (Rape Shield Law).

A three-day jury trial was held from February 12 – 14, 2018. The trial court recounted:

> The prosecution's first witness was a party attendee named Nicholas Michael Minor. He testified that [the victim] had been drinking that night and she was intoxicated to the point of "stumbling all over the place and then later vomit[ing] all over the first floor." [The victim] was subsequently escorted to a bedroom on the third floor of the home to lie down and sleep. Mr. Minor went up to the bedroom "about every 15 minutes" to check on [her] condition. He testified that she was "mostly asleep the whole time." She answered his questions about her condition with tired mumbling responses. On one occasion, Mr. Minor observed [Appellant] lying on the bed with her. He felt uncomfortable with this situation and went downstairs to tell [Appellant's] girlfriend to get [him] out of the bed. Mr. Minor then returned upstairs, approached the bedroom and heard sounds of movement and the mumbled voice of [the victim] saying "stop." He entered the bedroom and observed that [Appellant] and [the victim] both had their pants off with their genitals exposed. [Appellant] was on top of [the victim] penetrating her vagina with his penis while she kicked her legs and said "stop" and "no." Mr. Minor then grabbed [Appellant] and pulled him off [the victim].
>
> Mr. Minor then went downstairs with [Appellant] while [the victim] remained upstairs. Mr. Minor relayed what he had witnessed to Michele Leichter, Kate Kirch, and others at the party. Ms. Leichter testified that Mr. Minor told her that [Appellant] was "having sex with a girl who was, herself, unconscious." After hearing this Ms. Leichter confronted [Appellant] who told her that he "f'd up" and "made a mistake."

[The victim] testified she had been drinking throughout the night. She stated she had two glasses of wine, two shots, and a mixed drink that she did not finish, all within a short period of time. She remembered becoming intoxicated and eventually vomiting. Her memory after that was hazy, but she was told that she was taken to a bedroom on the top floor of the house. Her next clear memory was waking up without pants on and [Appellant] on top of her penetrating her vagina with his penis. [The victim] remembered saying "no," followed by a period that she did not remember. The next thing she remembered was crying in the bedroom and being consoled by her friends who informed her that [Appellant] had been kicked out of the party. She testified that although she intended to report the incident to police, she was not in a condition to do so that night.

[The victim] returned home at about noon on New Year's Day. She told her parents what had happened and they took her to Abington Hospital. A "rape kit" examination was performed at the hospital and [the victim] then proceeded directly to the Norristown police station to provide a statement. The examination for the rape kit was administered by Kristen Knottek, R.N. Ms. Knottek testified that she performed a genital examination of [the victim] using a speculum. Swabs were taken from [the victim's] cervix, vagina, labia, and rectum. DNA analysis was performed on these swabs by the Pennsylvania State Police Bureau of Forensic Services in conjunction with buccal swabs collected from [Appellant]. The parties stipulated that, if called to testify, Melinda Charley would be qualified as an expert in the field of DNA analysis and would testify that she analyzed the swabs collected from [the victim] and the DNA profile obtained from the swabs of [Appellant] and concluded "[Appellant] and his paternal male relatives could not be excluded as the contributor of the DNA found on the vaginal and labia swabs."

[Appellant], age 25, testified that he arrived at the party around 9:00 p.m. He began drinking after he arrived. He was familiar with [the victim] since they worked at the same bakery together. After midnight, in an intoxicated state, [Appellant] went looking for a place to sleep. [Appellant] testified he came upon the bedroom where [the victim] was and did not initially realize she was in the bed. He then noticed that [the victim] was in the bed and that her pants were off, but she was wearing underwear. [Appellant] testified that [the victim] then motioned for him to join her in the bed. [Appellant] and [the victim] then

began kissing and fondling. He used his fingers to penetrate her vagina. [Appellant] testified he was unable to become aroused. He attempted to have intercourse with [the victim], but was unable to do so. After attempting unsuccessfully to have intercourse with [the victim], she told him "[n]o, forget it, get out[,]" at which point he buttoned his pants, left the bedroom, and went back downstairs. [Appellant] testified there was no indication from [the victim], either verbally or otherwise, that she was not a willing participant in this interaction or that she was asleep or unconscious at any point.

[Appellant] stated Mr. Penhollow was in the room when [the victim] told [Appellant] to get out, but at no point did Mr. Minor come into the bedroom and pull him off [the victim]. After returning downstairs, many people were yelling at him and asking him what happened, but he did not remember any specific conversations. He was told to wait outside while [his girlfriend] got his things and he then left with her.

Trial Court Opinion, 9/17/18, at 2-5 (footnotes and citations to notes of testimony omitted).

The jury convicted Appellant of rape of an unconscious person, sexual assault, and indecent assault of an unconscious person. On May 14, 2018, the trial court sentenced Appellant to an aggregate four to eight years of incarceration, followed by six years of probation. Appellant filed a motion for reconsideration of sentence, and on June 20, 2018, the court vacated the May 14, 2018 sentence, and re-sentenced Appellant to three to six years of incarceration, followed by seven years of probation. Appellant filed a timely appeal. Both Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

Appellant presents three issues on appeal:

I. WHETHER THE TRIAL COURT ERRED IN DENYING [APPELLANT'S] MOTION IN LIMINE TO INTRODUCE

- 4 -

EVIDENCE OF THE SEXUALLY EXPLICIT DANCE DISPLAY BETWEEN THE COMPLAINANT AND APPELLANT'S GIRLFRIEND THAT OCCURRED JUST A COUPLE HOURS PRIOR TO THE ALLEGED SEXUAL ASSAULT AS IT IMPACTED THE COMPLAINANT'S CREDIBILITY?

II. WHETHER THE TRIAL COURT ERRED IN FAILING TO PROVIDE A CURATIVE INSTRUCTION AFTER THE KEY PROSECUTION WITNESS TESTIFIED REGARDING THE "GOOD CHARACTER" OF THE COMPLAINANT?

III. WHETHER THE PROSECUTOR COMMITTED MISCONDUCT BY INTENTIONALLY ELICITING THE TESTIMONY FROM A WITNESS THAT SHE WAS A RAPE VICTIM?

Appellant's Brief at 13.

In his first issue, Appellant argues that the trial court erroneously relied on the Rape Shield Act in denying Appellant's motion *in limine* seeking to introduce evidence that the victim "danced in a sexually provocative manner with Appellant's girlfriend a couple of hours before the alleged sexual assault." Appellant's Brief at 16. Appellant asserts that evidence of the two women dancing was admissible under the Rape Shield Act because "the defense in this case was consent and the proffered evidence of the complainant's prior sexual conduct . . . with the Appellant's girlfriend . . . was arguably in an attempt to lure or engage the Appellant into a consensual sexual act." *Id.* at 19.

We explained:

This Court has established that a trial court's ruling on the admissibility of a sexual abuse victim's prior sexual conduct will be reversed only where there has been a clear abuse of discretion. *Commonwealth v. K.S.F.*, 102 A.3d 480, 483 (Pa. Super. 2014). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the

judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused." *Id.* (citation and quotation omitted).

The Rape Shield Law restricts the introduction of evidence of a victim's past sexual conduct and provides, in pertinent part, as follows:

Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter **except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible** pursuant to the rules of evidence.

18 Pa.C.S. § 3104(a). The purpose of the Rape Shield Law is "to prevent a trial from shifting its focus from the culpability of the accused toward the virtue and chastity of the victim." *Commonwealth v. Burns*, 988 A.2d 684, 689 (Pa. Super. 2009) (citation omitted). Moreover, "[t]he Rape Shield Law is intended to exclude irrelevant and abusive inquiries regarding prior sexual conduct of sexual assault complainants." *Id.*

*Commonwealth v. Largaespada*, 184 A.3d 1002, 1006 (Pa. Super. 2018)

(emphasis added to language of Section 3104).

Appellant seeks to introduce evidence of the victim's conduct under the

exception to the Rape Shield Law that allows "evidence of the alleged victim's

past sexual conduct with the defendant where consent of the alleged victim is

at issue." However, Appellant concedes that the alleged sexual conduct

occurred between the victim and Appellant's girlfriend – not Appellant – and

the conduct "was **arguably** an attempt to lure or engage the Appellant into a consensual sexual act." Appellant's Brief at 19 (emphasis added).

To the extent Appellant seeks an evidentiary exception to the Rape Shield Act unrelated to the victim's "conduct with the defendant," we note:

> [T]his Court has recognized several other exceptions in an effort "to reconcile the effect of the statute in excluding evidence with the accused's sixth amendment right to confrontation and cross-examination." *Commonwealth v. Guy*, 454 Pa.Super. 582, 686 A.2d 397, 400 (1996). Established exceptions include evidence that negates directly the act of intercourse with which a defendant is charged, evidence demonstrating a witness' bias, or evidence that attacks credibility. *Commonwealth v. Allburn*, 721 A.2d 363, 367 (Pa. Super. 1998). Notably, "evidence tending to directly exculpate the accused by showing that the alleged victim is biased and thus has a motive to lie, fabricate, or seek retribution is admissible at trial." *Guy*, *supra* at 400.

*Largaespada*, 184 A.3d at 1007.

Viewing Appellant's evidentiary argument in conjunction with pertinent statutory and case law, we discern no abuse of discretion by the trial court in ruling that Appellant's proffered evidence was inadmissible. The trial court observed that Appellant's offer of proof did not include any positive indication from the victim regarding her desire for Appellant to join her and Appellant's girlfriend, and made "no reference to any communication at all between [the victim] and [Appellant] during this interaction," such that Appellant's offer of proof did not "pierce the rape shield protection afforded to the victim." Trial Court Opinion, 9/17/18, at 7. The trial court also concluded that if there "was any probative value at all to the proffered evidence, it is greatly outweighed by the prejudice and underlying policy considerations of the rape shield

- 7 -

statute." *Id.* Indeed, upon review, we find the trial court's discussion of this issue to be both comprehensive and persuasive, such that we adopt and incorporate it with our determination that this first issue lacks merit. *See id.* at 6-9.

In his second issue, Appellant assails a statement at trial made by Mr. Minor, whom Appellant characterizes as the "key prosecution witness," arguing that the issue is not waived even though Appellant failed to object to Mr. Minor's statement. *See* Appellant's Brief at 32. Appellant asserts that "in certain circumstances the evidence is so clearly unduly prejudicial that a curative instruction is immediately provided by the court *sua sponte* [and] must be provided whether or not the instruction is requested by the defense." *Id.*

Appellant takes issue with the following testimony elicited from Mr. Minor on direct examination:

> COMMONWEALTH: You described [the victim's] demeanor at certain points in time. What was her demeanor at the beginning stages of the night of New Year's Eve and, you know, as you knew her before New Year's Eve 2016 to '17?
>
> MR. MINOR: Before, she was a very nice person. Like she was very – she cared about everybody. She was a very sweet and open person to – you know enlighten people's day [sic]. She was a very nice person.

N.T., 2/12/18, at 140.[2]

Appellant claims the above testimony of the victim's "good character is unduly prejudicial" and therefore inadmissible despite his failure to object. Appellant's Brief at 31. He emphasizes that the testimony "should have been the subject of an immediate *sua sponte* instruction by the court in order to ameliorate the devastating impact of this inadmissible and unduly prejudicial testimony." *Id.* at 35. We disagree.

Pennsylvania Rule of Appellate Procedure 302 unequivocally provides that issues not raised in the lower court are waived and cannot be raised for the first time on appeal. This is a fundamental rule of appellate practice. Our Supreme Court has stated:

> [I]t is axiomatic that issues are preserved when objections are made timely to the error or offense. *See Commonwealth v. May*, 584 Pa. 640, 887 A.2d 750, 761 (2005) (holding that an "absence of contemporaneous objections renders" an appellant's claims waived); and *Commonwealth v. Bruce*, 207 Pa.Super. 4, 916 A.2d 657, 671 (2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007) (holding that a "failure to offer a timely and specific objection results in waiver of" the claim). Therefore, we shall consider any issue waived where Appellant failed to assert a timely objection.

*Commonwealth v. Baumhammers*, 960 A.2d 59, 73 (Pa. 2008).

---

[2] After Mr. Minor answered the question about the victim's demeanor before the New Year's party, the Commonwealth then asked "Have you noticed any change in her demeanor since this happened?" N.T., 2/12/18, at 140. At that point, defense counsel objected as "beyond the scope of cross-examination" and the trial court sustained the objection. *Id.*

Further, to the extent the trial court perceives that testimony is inappropriate and is compelled to address it *sua sponte*, the Supreme Court has stated that it is within the sound discretion of the trial court to determine whether a curative instruction is necessary. **See, e.g., Commonwealth v. Sanchez**, 82 A.3d 943, 982 (Pa. 2013).

Here, the trial court was not compelled to react *sua sponte* to Mr. Minor's testimony, and upon review, found the issue to be waived because Appellant did not object to the question or move to strike the answer. **See** Trial Court Opinion, 9/17/18, at 9. The court observed that Appellant "did not request a curative instruction to Mr. Minor's testimony at the time it was given or at any later time in the trial." **Id.** Consistent with the foregoing, we agree that the issue is waived.

In his third and final issue, Appellant claims that he was unduly prejudiced by the Commonwealth's "misconduct by intentionally eliciting the testimony from a witness that she was a rape victim." Appellant's Brief at 36. Appellant objected to the witness's testimony and the trial court sustained the objection; however, Appellant claims he was prejudiced by the court's failure to provide a cautionary instruction. **Id.** Notably, Appellant concedes that trial counsel did not request a cautionary instruction or move for a mistrial. **Id.** at 37. Appellant nonetheless insists that he was unduly prejudiced and deprived of a fair trial. **Id.** Once again, we find waiver. As the trial court explained:

> No remedy was requested at the time of trial regarding the witness' answers. No claim was raised at trial regarding any

- 10 -

alleged prosecutorial misconduct. Thus, the issue has been waived. **_See Commonwealth v. Jones_**, 460 A.2d 739, 741 (Pa. 1983) (finding prosecutorial misconduct claim waived where defense counsel immediately objected to the prosecutor's conduct but failed to request mistrial or curative instructions); **_cf. Commonwealth v. Rhone_**, 619 A.2d 1080, 1083 (Pa. Super. 1993) (declining to find waiver for prosecutorial misconduct where counsel failed to request curative instruction, but lodged an objection, moved to strike the comment and requested a mistrial).

"[A] claim of prosecutorial misconduct must be viewed in the light of the entire context in which the alleged misconduct arose." **_Commonwealth v. LaCava_**, 666 A.2d 221, 235 (Pa. 1995). The prosecutor's inquiry into this subject was in response to [Appellant's] own cross-examination regarding how [the witness] characterized what she was told by Mr. Minor when giving her statement to the detective. "Having 'opened the door' to this subject, [Appellant] cannot now complain because the Commonwealth chose to further examine what was behind that door." **_Id._** at 234.

Trial Court Opinion, 9/17/18, at 14-15.

Finally, we note with regard to Appellant's second and third issues, that even in the absence of waiver, and assuming *arguendo* that the issues were preserved, Appellant would not be entitled to relief. We have stated:

If a trial court abuses its discretion in issuing an evidentiary ruling, "a verdict can still be sustained if the error was harmless." **_Commonwealth v. Poplawski_**, 634 Pa. 517, 130 A.3d 697, 716 (2015) (citation omitted). In **_Commonwealth v. Cooley_**, 632 Pa. 119, 118 A.3d 370 (2015), our Supreme Court explained that "[a]n error is harmless if it could not have contributed to the verdict. In other words, an error cannot be harmless if there is a reasonable possibility the error might have contributed to the conviction." **_Cooley_**, 118 A.3d at 380 (citation omitted); **_see also Commonwealth v. Mitchell_**, 576 Pa. 258, 839 A.2d 202, 214–15 (2003) ("An error will be deemed harmless where the appellate court concludes beyond a reasonable doubt that the error could not have contributed to the verdict.").

> Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

> *Commonwealth v. Hutchinson*, 571 Pa. 45, 811 A.2d 556, 561 (2002) (citation omitted). "The Commonwealth has the burden of proving harmless error beyond a reasonable doubt." *Poplawski*, 130 A.3d at 716 (citation omitted).

*Commonwealth v. Radecki*, 180 A.3d 441, 461 (Pa. Super. 2018) (footnote omitted).

As in *Radecki*, our review of the record reveals that over the course of the three-day trial, the brief statement by Mr. Minor about the victim's demeanor prior to the New Year's party, and the statement of a witness about being a rape victim without a curative instruction, were not prejudicial to Appellant. The witnesses' statements, in the context of all of the evidence presented, were at best harmless error, where the witnesses' statements "were merely cumulative of other untainted evidence." *Id.* at 461.

In sum, we conclude that there is no merit to Appellant's claims, and therefore affirm the judgment of sentence.

Judgment of sentence affirmed.

Judge Strassburger joins the memorandum.

Judge Pellegrini files a concurring memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/4/19</u>