OPINION BY DUBOW, J.:
*1004 Appellant, Jose Largaespada, appeals from the July 11, 2014 Judgment of Sentence entered in the Philadelphia County Court of Common Pleas after a jury found him guilty of Unlawful Contact With a Minor, Endangering the Welfare of Children, and Corruption of Minors.[1] After careful review, we affirm.
The relevant factual and procedural history is as follows. In 2003, then 9-year-old M.L. ("Victim") and her siblings moved from Nicaragua to the United States to live with their father, Appellant, and their paternal grandmother. Appellant began sexually abusing Victim when she was 10 and 11 years old. Appellant would grab Victim, undress her, kiss her body, and put his penis inside her vagina at night while everyone else in the house was sleeping. See N.T. Trial, 4/3/13, at 107-17.
In 2009, after returning home from visiting her Mother in Nicaragua, then 15-year-old Victim informed Appellant, "I don't want to do this anymore." Id. at 118. According to Victim, Appellant became upset, stated he wanted to "do it" with Victim, grabbed her, removed her clothing, pushed her onto the living room sofa, and touched her breasts and vagina. Id. at 119. Victim pushed Appellant off her and ran to the bathroom, where she texted her older brother. Victim told her brother about the history of abuse and current incident of abuse. Id. 120-21.
Victim's brother came home, confronted Appellant about Victim's accusations, and angrily left. Within a week or so, Victim's brother rented an apartment and Victim moved in with her brother. See id. at 121-25. Approximately two weeks later, in September 2009, Victim reported the incidents to police and gave detectives a signed statement. Victim explained that she had not reported Appellant's conduct previously because she was afraid and did not think that anyone would believe her. Id. at 119-20.
In October 2009, police arrested Appellant and charged him with, inter alia , Rape, Incest, and the above-mentioned charges. Prior to trial, Appellant filed a Motion to Pierce the Rape Shield Law in order to introduce evidence that Victim allegedly engaged in an ongoing secretive sexual relationship with her uncle in Nicaragua.[2] The trial court held three in camera evidentiary hearings at which Appellant presented:
(1) testimony from Victim's older half-sister, who knew of the relationship between her uncle and Victim, and testified that Victim and their uncle *1005 asked her not to tell anyone;[3]
(2) cell phone records showing frequent contact between Victim and her uncle in the weeks leading up to Victim's reporting of Appellant's abuse to police;
(3) testimony from Appellant's niece regarding sexual contact she had with Victim's uncle in Nicaragua in 1998 when she was 14 years old and the uncle was 37 years old; and
(4) limited, non-substantive testimony from the uncle.
On July 13, 2012, the court denied the Motion after determining that the evidence Appellant wanted to present was not relevant.
At trial, the jury heard testimony from, inter alia , Victim and her brother. Victim's brother testified about an incident where he returned home from a 4th of July party, opened the door, and witnessed Appellant on the living room sofa with Victim on top of him and both were not wearing pants. The brother was shocked and immediately left the house. Appellant told the brother he would never do it again and repeatedly asked the brother not to tell anyone. N.T. Trial, 4/3/13, at 167-171.
Victim's brother also corroborated Victim's testimony and stated that he was at the movies when he received a text message from Victim that Appellant tried to touch her inappropriately. Victim's brother returned to the house to find Victim crying in the bathroom, confronted Appellant, and eventually moved out with Victim. Id. at 172-77.
On April 8, 2014, the jury found Appellant guilty of Unlawful Contact with a Minor, Endangering the Welfare of Children, and Corruption of Minors.[4] On July 11, 2014, the trial court sentenced Appellant to 6 to 23 months' incarceration followed by 5 years of probation.
Appellant filed a timely Notice of Appeal.[5] Both Appellant and the trial court complied with Pa.R.A.P. 1925.
Appellant raises the following issues on appeal:
1. Whether the trial court abused its discretion in denying Appellant's Motion to Pierce the Rape Shield and prohibiting Appellant from introducing evidence that [Victim] fabricated the sexual assault allegations against Appellant in order to conceal and continue her ongoing sexual relationship *1006 with Appellant's brother-in-law, [Victim's uncle]?
2. Whether the trial court erred in finding that the above-mentioned brother-in-law and potential defense witness [ ] held a Fifth Amendment privilege to avoid questioning for conduct which took place in Nicaragua?
3. Whether the trial court erred in [ ] sustaining the Commonwealth's objection when Appellant's trial counsel asked the minor [Victim]'s brother if he had sued Appellant for child support after [Victim] moved in with her brother?
4. Whether the trial court erred in sustaining the Commonwealth's objection when Appellant's trial counsel asked whether [Victim] had posted on Facebook or other social media about drinking alcohol and smoking after moving out of Appellant's house?
Appellant's Brief at 5-6.
Motion to Pierce the Rape Shield
In his first issue, Appellant avers that the trial court abused its discretion in denying Appellant's Motion to Pierce the Rape Shield. Id. at 18. Appellant argues that the following evidence was relevant to establish that Victim had a motive to fabricate allegations of sexual abuse against Appellant:
(1) Victim had an on-going sexual and monetary relationship with her uncle;
(2) Victim did not want Appellant to learn about the relationship; and
(3) Victim wanted to leave Appellant's house so that Victim could continue the relationship with her uncle.
Id. at 29. The trial court found that this evidence was not relevant to establish that Victim had a motive to fabricate allegations against Appellant. We agree.
This Court has established that a trial court's ruling on the admissibility of a sexual abuse victim's prior sexual conduct will be reversed only where there has been a clear abuse of discretion. Commonwealth v. K.S.F. , 102 A.3d 480, 483 (Pa. Super. 2014). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused." Id. (citation and quotation omitted).
The Rape Shield Law restricts the introduction of evidence of a victim's past sexual conduct and provides, in pertinent part, as follows:
Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.
18 Pa.C.S. § 3104(a). The purpose of the Rape Shield Law is "to prevent a trial from shifting its focus from the culpability of the accused toward the virtue and chastity of the victim." Commonwealth v. Burns , 988 A.2d 684, 689 (Pa. Super. 2009) (citation omitted). Moreover, "[t]he Rape Shield Law is intended to exclude irrelevant and abusive inquiries regarding prior sexual conduct of sexual assault complainants." Id.
The Rape Shield Law includes one statutory exception to the general prohibition against evidence of victim's past sexual conduct, namely the admission of *1007 evidence of past sexual conduct with the defendant where consent is at issue. See 18 Pa.C.S. § 3104(a). In addition, this Court has recognized several other exceptions in an effort "to reconcile the effect of the statute in excluding evidence with the accused's sixth amendment right to confrontation and cross-examination." Commonwealth v. Guy , 454 Pa.Super. 582, 686 A.2d 397, 400 (1996). Established exceptions include evidence that negates directly the act of intercourse with which a defendant is charged, evidence demonstrating a witness' bias, or evidence that attacks credibility. Commonwealth v. Allburn , 721 A.2d 363, 367 (Pa. Super. 1998). Notably, "evidence tending to directly exculpate the accused by showing that the alleged victim is biased and thus has a motive to lie, fabricate, or seek retribution is admissible at trial." Guy , supra at 400.
A defendant wishing to introduce evidence of a victim's prior sexual conduct that falls within an exception to the Rape Shield Law must make a specific, written proffer to the court. Id. ; 18 Pa.C.S. § 3104(b). Once a defendant meets this threshold requirement, the trial judge is required to hold an in camera hearing to determine whether the evidence is relevant, exculpatory, and necessary to the accused's defense. Guy, supra at 400. In other words, the evidence must be "relevant to exculpate the accused, more probative than prejudicial, and non-cumulative in nature." Id. at 401.
Instantly, Appellant filed a Motion to Pierce the Rape Shield Law and the trial court held an in camera hearing. As discussed in greater detail above, Appellant presented evidence of an extensive sexual relationship between Victim and her uncle as well as the fact that the uncle paid Victim's stepsister in order to prevent the stepsister from discussing the relationship. Appellant also presented evidence that Victim and her uncle exchanged hundreds of text messages before Victim reported the sexual abuse to the police and Victim wanted to keep the relationship with her uncle secret. From these facts, Appellant argues that Victim had a motive to fabricate allegations against Appellant.
The trial court properly found this evidence irrelevant because this evidence alone is insufficient from which to infer that Victim had a motive to fabricate the allegations against Appellant.[6] This is true for several reasons. First, the evidence of an extensive relationship between Victim and her uncle is just evidence of a relationship. The existence of a relationship alone is insufficient to infer a motive to fabricate. Even the fact that Victim did not want others to know about the relationship is insufficient to create a logical nexus that Victim would fabricate allegations about Appellant to the police.
This is true especially in light of the fact that Appellant did not know about Victim's relationship with her uncle at time Victim reported the sexual abuse to the police. If Appellant knew about the relationship and tried to end it, maybe there could be some evidence from which to infer that Victim made allegations to retaliate against Appellant and, thus, had a motive to lie. But, there was no evidence of Appellant ever learning about, let alone trying to end, the relationship. To hold otherwise would eliminate the protections of the Rape Shield *1008 Law because we would allow the existence of any sexual relationship to be basis for inferring a motive to fabricate.
Appellant also argues that the approximately 400 text messages that Victim and her uncle sent in the three days before Victim made the report to the police was sufficient evidence to infer that Victim fabricated the allegations. Once again, it is not quantity, but quality of evidence, that is dispositive. If Appellant had presented evidence from the text messages that demonstrated that Victim intended to fabricate the allegations or from which the trial court could infer such a motive, then the text messages would be relevant. However, the fact that Victim and her uncle exchanged many text messages in and of itself is not sufficient to infer that Victim had a motive to fabricate allegations.
Appellant further argues that Victim had a motive to fabricate the allegations against him because Victim wanted to move out of Appellant's house so that Victim could continue her relationship with her uncle. Once again, this argument fails because there is no evidence that Appellant knew about the relationship at the time Victim pressed charges. Even if Appellant did know, there is no evidence that Appellant would have prevented Victim from moving out of Appellant's house or continuing the relationship.
Appellant cites Commonwealth v. Northrip , 945 A.2d 198 (Pa. Super. 2008), to support his claim that the trial court should have permitted evidence of Victim's secret sexual relationship with her uncle to show that Victim had a motive to fabricate to preserve her secret relationship with her uncle. However, Appellant's reliance on Northrip is misplaced.
In Northrip , the victim had a sexual relationship with her stepbrother. The victim's stepmother found out and the victim threatened to retaliate if anyone told the victim's mother about the sexual relationship. The stepmother and the victim's father, the appellant, then scheduled a time to talk to the victim's mother. The victim subsequently reported to the police that the appellant had sexually abused her.
Northrip , therefore, is distinguishable because the appellant did not just present evidence of the sexual relationship between the victim and her stepbrother, but also evidence that the victim threatened to retaliate if the victim's stepmother told the victim's mother. It is this evidence of threats of retaliation that provided the trial court with evidence from which to infer that the victim had a motive to fabricate allegations against the defendant. There is no such evidence in this case.
Accordingly, the trial court did not abuse its discretion when it determined that the proffered evidence was not relevant to establish a motive to fabricate and properly denied Appellant's Motion to Pierce the Rape Shield.
Uncle's Assertion of Fifth Amendment Rights
In his next issue, Appellant avers that the trial court erred during the in camera hearing when it allowed Victim's uncle to assert a Fifth Amendment Privilege against self-incrimination for conduct that took place in Nicaragua, and that the trial court should have compelled the uncle to answer all questions related to his conduct with Victim and her sister in Nicaragua. Appellant's Brief at 30. Appellant argues that pursuant to United States v. Balsys , 524 U.S. 666, 118 S.Ct. 2218, 141 L.Ed.2d 575 (1998), the privilege against self-incrimination is not available to a defense witness asserting the privilege for fear of foreign prosecution alone. Id. at 30. This issue is waived because Appellant failed to object during the in camera hearing.
*1009 Once Victim's uncle asserted his Fifth Amendment Privilege, Appellant provided the trial court a list of questions that Appellant wanted to ask the uncle. The trial court allowed Appellant to ask Victim's uncle six of the questions and excluded the remaining questions, without objection from Appellant. Appellant failed to object, and, therefore, failed to preserve this issue for our review. See Pa.R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal"); Commonwealth v. Powell , 598 Pa. 224, 956 A.2d 406, 423 (2008) (holding the absence of a contemporaneous objection below constitutes a waiver of appellant's claim).
Objections During Cross-Examination
In his third and fourth issues, Appellant asserts that the trial court abused its discretion when it sustained two separate Commonwealth objections to the cross-examination of Victim and her brother. Appellant's Brief at 18. Appellant contends that he should have been able to cross-examine Victim's brother about whether he filed a child support lawsuit against Appellant after Victim moved in with him to show Victim's brother was biased and had a financial interest in making allegations against Appellant. Id. at 31. Appellant also argues that he should have been able to cross-examine Victim regarding her current social media posts relating to smoking and drinking to show that she was biased against Appellant and the restrictions that she had experienced under his roof approximately four years earlier. Id.
It is well settled that the scope of cross-examination is a matter within the discretion of the trial court and will not be reversed absent an abuse of that discretion. Commonwealth v. Hitcho , 633 Pa. 51, 123 A.3d 731, 769 (2015). When a trial court determines the scope of cross-examination, it may consider whether the matter is collateral, the cross-examination would be likely to confuse or mislead the jury, and the cross-examination would waste time. Commonwealth v. Brinton , 275 Pa.Super. 304, 418 A.2d 734, 736 (1980).
On cross-examination, Appellant asked Victim's brother, "And you sue[d] my client for child support; correct?" N.T. Trial, 4/3/13, at 193. The trial court sustained the Commonwealth's objection to the question and opined that "the question was irrelevant and referred to an obviously collateral matter which could only tend to confuse the fact-finder[.]" Trial Court Opinion, filed 2/8/17, at 9. We agree.
The fact that Victim's brother, who was financially supporting Victim, sued Appellant to pay for child support is not relevant to show that Victim's brother was biased and would have been confusing to the jury. Accordingly, we find no abuse of discretion.
Appellant also attempted to cross-examine Victim regarding her current social media postings. The trial court precluded the questions, ultimately concluding that Victim's social media postings were not relevant because Victim posted them several years after she reported the sexual abuse to the police. See id. at 9-10. We agree with the trial court that the fact that Victim was drinking and smoking when she was nineteen years old is irrelevant to what Victim did during the period when she was living with Appellant and alleged that Appellant was sexually abusing her. See id. at 10.
Victim's current social media postings as an adult are not relevant to show Victim's bias four years earlier when she was a child. Therefore, we conclude that the trial court did not abuse its discretion in sustaining *1010 the Commonwealth's objections and find no abuse of discretion.
Judgment of Sentence affirmed.

18 Pa.C.S. § 6318(a)(1) ; 18 Pa.C.S. § 4304(a)(1) ; and 18 Pa.C.S. § 6301(a)(1)(i), respectively.

Our review of the record reveals that Appellant's Motion to Pierce the Rape Shield is not docketed in the certified record, however Appellant has provided this Court with an unstamped copy of the Motion and subsequent procedural history indicates that all parties treated the Motion as if it had been filed. The Commonwealth filed a Response to Defendant's Motion, as well as an Addendum. See Commonwealth's Response to Defendant's Motion to Pierce the Rape Shield, filed 3/23/11; Addendum to Commonwealth Response to Defendant's Motion to Pierce the Rape Shield, field 6/12/12. In response, Appellant filed a Reply to Addendum, which reincorporated Appellant's original Motion. See Reply to Addendum to Commonwealth Response to Defendant's Motion to Pierce the Rape Shield, filed 6/22/12. In addition, Appellant and the court both referred to the written Motion during the first in camera hearing on the Motion without any objection from the Commonwealth. See N.T. Motion, 12/14/11, at 4-5.

Victim's half-sister testified that she observed sexual activity between the uncle and Victim when the three of them were sleeping in the same bed after a night of drinking alcohol in Nicaragua. When the half-sister confronted the uncle and Victim, they both asked her not to tell anyone and the uncle offered to pay her. The half-sister testified that the uncle gifted a washing machine and television to her Mother in Nicaragua. The uncle also wired money to the half-sister to give to Victim. The half-sister testified that she did not tell anyone. See N.T. Motion, 12/14/11, at 21-45; N.T. Motion, 1/13/12, at 4-34.

The jury found Appellant not guilty of Rape, Incest, Indecent Assault against a Person Less than Thirteen Years Old, and Rape of a Child.

Appellant filed a timely Notice of Appeal on August 1, 2014, and, on June 11, 2015, this Court dismissed the appeal for failure to file a brief. On December 1, 2015, Appellant filed a Petition pursuant to the Post Conviction Relief Act ("PCRA"). On December 7, 2015, by agreement of the parties, the trial court reinstated Appellant's right to a direct appeal nunc pro tunc . On December 8, 2015, Appellant filed a second Notice of Appeal. On February 16, 2016, this Court dismissed the appeal for failure to file a docketing statement. On May 10, 2016, Appellant filed a second PCRA Petition. On October 25, 2016, by agreement of the parties, the trial court again reinstated Appellant's right to a direct appeal nunc pro tunc.

Appellant argues, based on the Trial Court Opinion, that the trial court found that the evidence was not relevant because the trial court did not find the evidence credible. See Appellant's Brief at 37. The transcript of the hearing, however, demonstrates that the trial court found the proffered evidence not relevant. N.T. Motion, 7/13/12, at 4. There is no mention of credibility of the witnesses. Thus, we will not address the issue of credibility of the witnesses and only address the relevancy of the proffered evidence.