J-S36010-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GARY WAYNE GEPHART | : | |
| | : | |
| Appellant | : | No. 1707 MDA 2018 |

Appeal from the Judgment of Sentence Entered January 15, 2016
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0000584-2014

BEFORE:   PANELLA, P.J., SHOGAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PANELLA, P.J.:                    **FILED NOVEMBER 07, 2019**

Gary Wayne Gephart appeals *nunc pro tunc* from the judgment of sentence imposed after a jury convicted him of one count of involuntary deviate sexual intercourse, **see** 18 Pa.C.S.A. § 3123(a)(5), one count of aggravated indecent assault, **see** 18 Pa.C.S.A. § 3125(a)(6), and one count of indecent assault, **see** 18 Pa.C.S.A. § 3126(a)(6). All three offenses were predicated on the complainant having a mental disability. The court imposed an aggregate sentence of nine to eighteen years of incarceration. Gephart challenges the sufficiency of the evidence and further claims the trial court abused its discretion when it denied the admittance of certain evidence. We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

Gephart was convicted as the result of a September 22, 2012 incident wherein he went to the victim's apartment and had oral and vaginal intercourse with the victim. The victim was fifty-nine years of age, but had the mental capabilities of someone who is nine years of age.

Gephart's stated reason for going to the victim's apartment was to give her a VCR and to fix her table. He also brought a bottle of lotion with him to give the victim a massage. Eventually, Gephart and the victim engaged in sexual activity, and the testimony adduced at trial offered conflicting accounts of who performed oral sex on whom. However, while Gephart indicated that the victim made the initial sexual advance and stated that he was under the impression the victim wanted to engage in sexual acts, Gephart admitted to having digitally penetrated her vagina. After the sexual activity concluded, Gephart testified that he helped the victim in cleaning out a birdcage.

Two days later, the victim confided in another and indicated that she explicitly told Gephart that she had not wanted to engage in sexual activity with him and further told him to stop. The police were then contacted, and charges were filed.

At trial, the Commonwealth utilized the opinion of Dr. Michael Wolff. The trial court accepted him as an expert in clinical psychology over Gephart's objection. Based on, *inter alia*, a general sexual knowledge questionnaire ("GSKQ"), Dr. Wolff rendered an opinion that the victim could not consent to sexual activity.

A jury found Gephart guilty of three charges, and he was sentenced on January 15, 2016. Gephart filed a timely post-sentence motion, which was denied after a hearing. Several months later and having taken no direct appeal, Gephart filed a *pro se* petition, pursuant to the Post Conviction Relief Act ("PCRA"), with each of his claims alleging ineffective assistance of counsel. **See** 42 Pa.C.S.A. §§ 9541-9546.

Gephart was then provided with PCRA counsel. Eventually, after an evidentiary hearing, the PCRA court granted Gephart's petition in part and denied it in part. In doing so, the PCRA court restored Gephart's direct appeal rights for trial counsel's failure to take a direct appeal, but explicitly denied all other facets of his petition. **See** Appellant's Brief, at 9-13 (citations to the record omitted); Appellee's Brief, at 2-4 (citations to the record omitted). This *nunc pro tunc* appeal followed.

In his appeal, Gephart raises six questions for our consideration:

1) Was the evidence presented at trial insufficient to sustain Appellant's convictions because each count required the Commonwealth to prove the victim was incapable of providing consent[,] and the Commonwealth failed to prove this beyond a reasonable doubt?

2) Did the trial court abuse its discretion in failing to admit evidence that the victim was not married and gave birth to children because such evidence was not being offered for the purposes of attacking the victim's reputation for chastity, but was instead being offered for the purposes of showing she had the legal capacity to get legally married, consent to sexual intercourse, and have children?

3) Did the PCRA [c]ourt err by not finding trial counsel provided ineffective assistance of counsel when she failed to attempt to

- 3 -

exclude prior to trial the admission of impeachment evidence of Appellant's prior criminal convictions pursuant to Pa.R.E. 609(b)?

4) Did the PCRA [c]ourt err in finding that the trial counsel did not provide ineffective assistance of counsel by failing to request a *Frye* hearing to determine if Dr. Wolff's methodologies were generally accepted in the relevant scientific community?

5) Did the PCRA [c]ourt err in finding that trial counsel did not provide ineffective assistance of counsel by failing to present expert testimony?

6) Did the PCRA [c]ourt err in preventing Appellant the ability to investigate the alleged psychological evaluation conducted by the Penn State Psychological Clinic[] of the victim held on October 28, 2013?

Appellant's Brief, at 5-6.

In spite of receiving the right to appeal *nunc pro tunc*, Gephart's issues three through six challenge the PCRA court's determinations, with three of them unambiguously dealing with ineffective assistance of counsel concerns and the fourth one implicitly addressing the same.[1] Thus, Gephart has included two sets of questions: one being appropriate for a direct appeal and the other suited for a collateral PCRA appeal.

Once a PCRA court determines that a petitioner's direct appeal rights must be reinstated, the court may not proceed to address other issues raised in the PCRA petition. *See Commonwealth v. Harris*, 114 A.3d 1, 3-4. In

_____

[1] In his sixth issue, Gephart challenges the PCRA court's decision to deny him the ability to obtain discovery regarding a claim that the Commonwealth failed to disclose a prior psychological evaluation of the victim. He argues this information could have been germane to a claim that trial counsel was ineffective. *See* Appellant's Brief, at 61.

these situations, the PCRA court should grant the petitioner leave to file a direct appeal and end its inquiry. ***See id***.

The PCRA court should end its inquiry because, by restoring the petitioner's direct appeal rights, it has rendered the petitioner's judgment of sentence non-final. ***See id***., at 6. Therefore, the PCRA court lacks jurisdiction to address the remainder of the petition. ***See id***. Here, the PCRA court restored Gephart's direct appeal rights. As a result, all other determinations made in the PCRA court's order granting *nunc pro tunc* appeal rights are a legal nullity, as it did not have jurisdiction to consider such issues. In effect, Gephart's issues three through six are denied without prejudice until his judgment of sentence becomes final, and we proceed with a discussion on his two direct appeal arguments.[2]

Gephart's first contention is that insufficient evidence was presented to demonstrate that the victim was incapable of consent. "A claim challenging the sufficiency of the evidence is a question of law." ***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000).

---

[2] We again note that the PCRA court held a hearing on what appears to be all of the claims that are presently being denied without prejudice. "The law in this area recognizes that although the PCRA court may not properly review the merits of the substantive claims when direct appeal rights have been violated, that court's review will serve the evidentiary purpose of completing the record for appellate review." ***Harris***, 114 A.3d at 6 n.4 (citation omitted) (formatting altered). "Thus, after his direct appeal rights have been exhausted or extinguished and his judgment of sentence becomes final, [Gephart] may seek collateral relief on the grounds previously raised; the PCRA court may use the already developed evidentiary record and may supplement that record as it sees fit." ***Id***.

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Antidormi***, 84 A.3d 736, 756 (Pa. Super. 2014).

Gephart attacks Dr. Wolff's testimony, methodology, and findings when he offered his opinion that the victim was incapable of consent. ***See*** Appellant's Brief, at 24-29. Dr. Wolff relied upon the GSKQ to form the basis of his opinion. Through his evaluation, Dr. Wolff, *inter alia*, concluded that the victim had significant verbal reasoning problems.

Gephart points out that Dr. Wolff testified that the GSKQ assesses an individual's ability to communicate. ***See*** N.T., 9/28/15, at 40. Gephart contends, however, that there was inadequate consideration given to the distinction between her inability to express herself verbally versus her ability to understand sexual topics. Gephart highlights that the victim performed either average or above average on other components of the questionnaire.

- 6 -

*See* Appellant's Brief, at 25-26. Consequently, Gephart maintains "it is more likely that the victim actually had the sexual knowledge but could not communicate her answers[.]" *Id*., at 27.

Gephart also emphasizes Dr. Wolff's acknowledgment of certain methodological flaws when seeking verbal responses from the victim. Moreover, Gephart stresses that the victim's testimony indicated that she wanted a massage from Gephart and said no to anything further, even though Dr. Wolff was surprised by the victim's ability to manifest this response. And finally, Gephart argues that the fact that Dr. Wolff sought the victim's signature for the disclosure of confidential information implied that Dr. Wolff believed she understood the import of what she was allowing to be disclosed.

Gephart provides no authority that would allow this Court to conclude that Dr. Wolff's methodology was scientifically erroneous, that the victim saying "no" inherently implies she had the legal capability to consent to sexual contact, or that the victim's signature to a medical disclosure has any relevance to her being able to consent to sexual activity. Dr. Wolff administered the GSKQ to "assess her ability to report on information she had [and to determine whether] she was able … to communicate in terms of things like her general sexual knowledge, physiology, contraception, pregnancy, sexual orientation." N.T., 09/28/15, at 40. The GSKQ "runs through a series of questions, and … [the victim's] score on that measure is then compared both to the typical population, the average population, but it's also …

compared to individuals with intellectual disabilities." *Id*. Dr. Wolff also found that the victim had an intellectual disability "[b]ased on the evidence that was from two separate, distinct intellectual evaluations that generated an IQ score that fell within the range of a mild intellectual disability." *Id*.

On the GSKQ, the victim received a total score that was below the average score of people with intellectual disabilities. *See id*., at 58. Accordingly, Dr. Wolff concluded "[t]hat her knowledge regarding sexual information is significantly impaired." *Id*. When asked specific sexually-related questions, while the victim answered some questions correctly, she also answered "I don't know" to concepts related to male genitalia. *Id*., at 95. Further, she was unable to provide accurate answers in response to basic questions related to puberty, menstruation, and female genitalia. *See id*., at 95-98.

At trial, Gephart did not offer any scientific contradiction to the methods employed by Dr. Wolff nor did he utilize an expert to provide a different methodological testing regime or to discount Dr. Wolff's opinion. While there is obviously some level of subjectivity associated with the type of examination performed by Dr. Wolff, we find that there was sufficient evidence to enable the fact-finder to determine that the victim was unable to consent to sexual activity.

Our sufficiency of the evidence standard requires this Court to view such evidence in the light most favorable to the verdict winner, and we see no

reason to disturb the outcome of this case. *See Antidormi*, 84 A.3d at 756. It is not within our purview to weigh the evidence and then substitute our judgment for that of the fact-finder. *See id*. As evidence exists in the record demonstrating the victim's inability to consent to sexual activity, and it was the fact-finder's duty to either believe, partially believe, or not believe the evidence presented by Dr. Wolff, we find that Gephart is due no relief on this issue.

In his second argument, Gephart insists the trial court erred when it failed to admit evidence that the victim was married and gave birth to children. In effect, Gephart wishes to surmount the general prohibition against admission of evidence of the victim's past sexual activity established by Pennsylvania's Rape Shield Law, which states that past sexual conduct of the victim will not be admissible in prosecutions of crimes involving sexual abuse. *See* 18 Pa.C.S.A. § 3104(a).

We have recognized that there are rare cases permitting an accused the opportunity to present genuinely exculpatory evidence even in spite of the Rape Shield Law. *See Commonwealth v. Wall*, 606 A.2d 449, 457 (Pa. Super. 1992) (citation omitted). Specifically, we have held that

> the Rape Shield Law permit[s] admission of evidence of the victim's prior sexual activity … provided that a three-part test was met at an *in camera* hearing similar to that outlined in 18 Pa.C.S.A. § 3104(b). Specifically, the trial court is to determine: (1) whether the proposed evidence is relevant to show bias or motive or to attack credibility; (2) whether the probative value of the evidence outweighs its prejudicial effect; and (3) whether

there are alternative means of proving bias or motive or to challenge credibility.

***Commonwealth v. Fink***, 791 A.2d 1235, 1241-42 (Pa. Super. 2002) (citation and footnote omitted). Gephart appears to have followed the "proposal of evidence" procedure, as outlined in 18 Pa.C.S.A. § 3104(b).

"This Court has established that a trial court's ruling on the admissibility of a sexual abuse victim's prior sexual conduct will be reversed only where there has been a clear abuse of discretion." ***Commonwealth v. Largaespada***, 184 A.3d 1002, 1006 (Pa. Super. 2018) (citation omitted).

> An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised in manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

***Id***. (citation omitted).

Gephart sought to admit evidence that the victim was both married and had children from that marriage for the purpose of demonstrating that she was legally capable of consenting to sexual activity. ***See*** Appellant's Brief, at 31. To Gephart, "evidence of past sexual conduct [should be] admissible to show that a victim has the legal capacity to do[] so." ***Id***.

The trial court permitted testimony demonstrating that the victim was married at the time of the sexual assault. ***See*** PCRA Court Opinion, 11/30/18, at 2. However, it excluded any evidence or testimony regarding the victim's pregnancies and past sexual conduct, finding such information to be irrelevant. ***See id***., at 2-3. Therefore, to the extent Gephart argues that he

- 10 -

was somehow prohibited from eliciting testimony demonstrating the victim's marriage, such a contention is contradicted by the record. **See** Order, 09/28/15 ("[Gephart] shall not be barred from introducing the fact that on September 22, 2012, the complaining witness was at that time married.").

As to the admissibility of the victim having been pregnant, "[a] person is able to become pregnant without having the capacity to give consent to sexual intercourse. That is, consent is not necessary to become pregnant." **Commonwealth v. Thomson**, 673 A.2d 357, 361 (Pa. Super. 1996). Although **Thomson** was not decided under the Rape Shield Law, the language used in that decision clearly has import in this case.

Here, the trial court, in performing a balancing test, found not only that evidence of a prior pregnancy was not relevant and probative to the question of whether the victim was capable of consenting to sexual activity, but also that the likelihood of prejudice to the victim as a result of this disclosure was high. We perceive no abuse of discretion in this conclusion.

The mere fact that the victim became pregnant and then carried children to term does not, by itself, establish that the victim was therefore capable of consenting to sexual encounters generally. At a minimum, the balancing test performed by the trial court, wherein the court allowed evidence of the victim's marriage, but not evidence of her pregnancies, was not manifestly unreasonable or a misapplication of law.

As we find neither of Gephart's issues to be meritorious, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judge Shogan joins the memorandum.

Judge Pellegrini concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/07/2019