J-S08001-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RONALD KILLION | : | |
| | : | |
| Appellant | : | No. 642 EDA 2024 |

Appeal from the Judgment of Sentence Entered December 6, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0008787-2022

BEFORE:   DUBOW, J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED APRIL 3, 2025**

Appellant, Ronald Killion, appeals from the December 6, 2023 judgment of sentence of three years of reporting probation entered in the Philadelphia County Court of Common Pleas following his conviction after a bench trial of Criminal Trespass and Simple Assault.[1]  Appellant claims that the trial court erroneously limited the scope of his cross-examination of the victim and challenges the denial of his motion for a new trial.  After careful review, we affirm.

The relevant facts and procedural history are as follows.  At around midnight on November 28, 2022, Appellant went to the home of the victim, his friend of nine years.  Appellant woke the victim and her boyfriend, Tracy

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3503 and 2701, respectively.

Thompson, by banging on the victim's front door. The banging continued and grew louder. The victim, suspecting it was Appellant who was banging, went downstairs, where she unlocked and opened the door, and found Appellant standing in her doorway. Appellant began yelling at the victim, stating "I know you're not f-ing serious, you're going to bring this f-ing [] back in your house, are you f-ing serious. N.T., 10/27/23, at 12-13.

The victim then attempted to shut the door, but Appellant prevented her from doing so by placing his hand on top of the door, causing the door to fly open and pieces of it to "pop[] off" and "ricochet[.]" *Id.* at 15. As the victim began to retreat up the dark hallway, Appellant crossed the threshold and proceeded to enter the victim's home.

Mr. Thompson, who was standing at the top of the stairs, turned on the lights, whereupon Appellant "channeled his anger" and turned his attention to Mr. Thompson, stating "Oh yeah, I want to hit you anyway, come on, come on." *Id.* at 13-14. Mr. Thompson then descended the stairs. He and Appellant exited the home, began to argue on the porch, and then left the victim's property, where the two men continued to fight, ultimately culminating in Mr. Thompson hitting Appellant with a machete.[2] The victim then called 911. Police officers arrived at the victim's home shortly thereafter, accompanied by Appellant and Mr. Thompson, who had ceased fighting.

---

[2] Police arrested Mr. Thompson for assaulting Appellant with the machete.

On November 29, 2022, police officers arrested Appellant, and the Commonwealth charged him with Criminal Trespass, Simple Assault, Recklessly Endangering Another Person, and Criminal Mischief.

Appellant proceeded to a bench trial where he and the victim testified. In addition to the above facts, the victim also testified that she and Appellant had attempted a romantic relationship, but it ended. She testified that Appellant had previously had a key to her home, but he had returned it. She testified that she felt shocked as Appellant yelled at her in her doorway and that, because of Appellant's actions, the door "flew back open" and almost hit her in the face. *Id.* at 13. The victim also testified that, when Appellant crossed the threshold into her home, he reached his arms towards her, causing her to fear that he was going to grab her and "beat her up because he [saw] another man in my house and he wanted to be in that position and I wasn't willing to give him that chance." *Id.* at 15. The victim testified on cross-examination that Mr. Thompson never physically assaulted her.

Appellant's defense theory was that the victim—who he believed had a history of manipulating the legal system to help Mr. Thompson avoid criminal liability—fabricated the story that Appellant had instigated the altercation at her home on the night in question to insulate Mr. Thompson from liability for assaulting Appellant. During his cross-examination of the victim, Appellant's counsel attempted to undermine the victim's prior testimony that Mr. Thompson had never physically abused her by showing her a "police report about him breaking her ribs." *Id.* at 39-40. He explained to the court that

- 3 -

he sought to impeach the victim's "prior inconsistent statement that [Mr. Thompson] had never injured her with her statement to police that he broke her ribs." *Id.* at 41. He further argued that, because the victim was likely to be the Commonwealth's only witness, her credibility was an "extremely important issue," and, in addition to the police report contradicting her prior testimony, the victim had also failed to appear at several listings of a case prosecuting Mr. Thompson, resulting in its ultimate dismissal. *Id.* at 42. Last, he asserted that the history of abuse of the victim by Mr. Thompson "is relevant" and "could be a motive to be dishonest today, and motive to fabricate is something that can be brought out during impeachment of a witness. . . . It can be something that is outside the scope of this particular incident that would cause [the victim] to want to say something that is untruthful." *Id.* at 45.

The Commonwealth objected "to any kinds of attempts at impeachment with specific instances of conduct," and argued both that the statement in the police report was not a statement made by the victim and, therefore, should not be used to challenge the victim's credibility, and that this line of questioning was beyond the scope of the Commonwealth's direct examination. *Id.* at 40, 43-44.

The trial court sustained the Commonwealth's objection, finding that Appellant's counsel's cross-examination of the victim on this point was beyond the scope of direct examination and that an attempt to impeach the victim

with an "affidavit of probable cause that wasn't even signed by the witness in the case" and in a different criminal matter was improper. *Id.* at 46.

Appellant then testified in his own defense that he had gone to the victim's home that night to apologize over a disagreement that he and the victim had had earlier. He denied entering the victim's home and kicking or damaging her door on the night in question. He admitted that he prevented the victim from closing the door on him because "she attempted to slam the door on my face." *Id.* at 64. He testified that he would not let the victim close the door, and that he wanted to continue the interaction. The trial court found that Appellant had his hand on the victim's front door and prevented her from closing it, and, in so doing, crossed the threshold of her home.

Following its consideration of the evidence, the trial court convicted Appellant of Criminal Trespass and Simple Assault. On December 6, 2023, the court sentenced Appellant to three years of reporting probation.

On December 18, 2023, Appellant filed a post-sentence motion for a new trial asserting that the verdict was against the weight of the evidence and claiming that the Commonwealth violated ***Brady v Maryland***, 373 U.S. 83 (1963), by failing to disclose Mr. Thompson's criminal record which, he alleged, pertained to the victim's credibility.

The trial court denied Appellant's post-sentence motion on February 12, 2024.

This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following two issues on appeal:

1. Did the lower court err or abuse its discretion in refusing to allow [Appellant's] counsel's cross-examination of [the victim] about her motive to fabricate criminal allegations against [Appellant] to help [Mr. Thompson], a man accused of attacking [Appellant] on the night [Appellant] was arrested, avoiding criminal prosecution?

2. Did the lower court err in refusing to order a new trial where the Commonwealth violated its duties under **Brady**[] by refusing to provide the defense with evidence demonstrating the [victim's] history of manipulating the legal system to help her boyfriend avoid prosecution for his violent behavior?

Appellant's Brief at 2.

In his first issue, Appellant claims that the trial court abused its discretion in refusing to permit him to cross-examine the victim about her history of "manipulating the legal system" to help Mr. Thompson avoid criminal liability, which would have brought to light her motive to fabricate the allegations against Appellant. **Id.** at 11-22. In particular, Appellant contends that the court should have permitted him to elicit the victim's testimony pertaining to her failure to obey subpoenas issued in connection with the prosecution of Mr. Thompson in an unrelated matter "so that [Mr. Thompson] could avoid criminal liability" to demonstrate that the victim was "willing to manipulate the legal system to protect" Mr. Thompson. **Id.** at 14. He claims that this testimony would have highlighted the victim's willingness to lie in the instant case to again benefit Mr. Thompson, who, in Appellant's alternate version of events was the initial aggressor against Appellant. He avers that this testimony was not collateral to the issues presented in this case; rather,

"it was properly designed to attack [the victim's] truthfulness about whether [Appellant] assaulted her, not her truthfulness generally." *Id.* at 16. He asserts that this line of questioning was not more prejudicial than probative and that the court's ruling prejudiced Appellant because the victim's credibility was "essential to the Commonwealth's case." *Id.* at 17-22.

Generally, all relevant evidence is admissible, and evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence[.]" Pa.R.E. 401 and 402. The admission of evidence is within the discretion of the trial court. *Commonwealth v. Woodard*, 129 A.3d 480, 494 (Pa. 2015). "An abuse of discretion will not be found based on a mere error of judgment[;] rather[, it] occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Id.*

"The Confrontation Clause in the Sixth Amendment to the United States Constitution provides that all criminal defendants enjoy 'the right to confront and cross-examine adverse witnesses.'" *Commonwealth v. Rosser*, 135 A.3d 1077, 1087 (Pa. Super. 2016) (*en banc*) (citation omitted). "[T]he trial court has broad discretion regarding both the scope and permissible limits of cross-examination. The trial [court's] exercise of judgment in setting those limits will not be reversed in the absence of a clear abuse of that discretion, or an error of law." *Id.* (citations and quotation marks omitted). Additionally:

> Although the right of cross-examination is a fundamental right, it is not absolute. The trial court may place reasonable limits on defense counsel's cross-examination of a prosecution witness based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.

*Id.* at 1087-88 (citations and internal quotation marks omitted).

A trial court may limit the scope of cross-examination upon considering if the underlying subject is collateral, would likely confuse or mislead the fact-finder, and/or the cross-examination would waste time. ***Commonwealth v. Largaespada***, 184 A.3d 1002, 1009 (Pa. Super. 2018). "No witness can be contradicted on everything [s]he testifies to in order to test [her] credibility." ***Commonwealth v. Petrillo***, 19 A.2d 288, 295 (Pa. 1941) (emphasis and internal quotation marks omitted). "The facts relevant to the discrediting of a witness must have grown out of the witness's relationship **to the case on trial** or to those individuals involved in it or they must refer to the witness's testimonial infirmity or inability **in respect to that case**." *Id.* at 296 (some emphasis added).

The notes of testimony indicate that, to impeach the victim's credibility, Appellant sought to admit an affidavit of probable cause that the police prepared in response to an allegation that on a prior occasion Mr. Thompson had assaulted the victim, breaking her ribs. Appellant intended to pursue a line of questioning pertaining to the unrelated charges against Mr. Thompson

for two reasons: (1) to show the trial court that the victim lied when she testified that Mr. Thompson had never assaulted her, thereby purportedly undermining her credibility; and (2) to illustrate the victim's history of manipulating the legal system to benefit Mr. Thompson because, according to Appellant, the Commonwealth dropped the charges against Mr. Thompson because the victim refused to cooperate in his prosecution. The trial court explained that it precluded the evidence as both irrelevant and collateral to the case at hand. Trial Ct. Op., 6/21/24, at 5. It found that "Appellant's assertion that alleged physical abuse by a third-party has some bearing on [the victim's] ability to be truthful in the present case is incomprehensible and completely outside the scope of the trying issue in this case." *Id.* at 9.

Following our review, we conclude that the trial court did not abuse its discretion in limiting Appellant's cross-examination of the victim to the facts of the case at hand, thereby precluding Appellant from further cross-examination about the facts of the unrelated criminal case against Mr. Thompson. Those facts are not relevant to any facts giving rise to the charges against Appellant. Any evidence that Mr. Thompson may have been abusive to the victim in the past was collateral and irrelevant to the case on trial and unnecessary to the court's determination of the victim's credibility. Simply, because the trial court sat as the trier of fact in this case, it had ample opportunity to assess the victim's credibility throughout her testimony, without the admission of irrelevant and collateral evidence. Appellant's first claim, therefore, garners no relief.

- 9 -

In his second issue, Appellant claims he is entitled to a new trial because the Commonwealth violated **Brady** by withholding evidence pertaining to Mr. Thompson's criminal history, which Appellant alleges is exculpatory. Appellant's Brief at 22-27.

Under **Brady** and its progeny, the prosecution violates a defendant's due process rights by withholding exculpatory evidence. **Commonwealth v. Bagnall**, 235 A.3d 1075, 1077 n.1 (Pa. 2020). A **Brady** claim "presents a question of law, for which our standard of review is *de novo* and our scope of review is plenary." **Id.** at 1084.

In asserting a **Brady** claim, a defendant must prove that: "(1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the prosecution has suppressed the evidence, either willfully or inadvertently; and (3) the evidence was material, meaning that prejudice must have ensued." **Id.** at 1086.

Appellant asserts that the Commonwealth withheld all discovery documents related to the prior criminal case arising from the victim's accusations that Mr. Thompson broke her ribs. Appellant's Brief at 22. He contends that this is essential impeachment evidence that he would have used to undercut the victim's denial that any such assault occurred and would have demonstrated that the Commonwealth withdrew the case against Mr. Thompson due to the victim's failure to cooperate. **Id.**

Addressing the first prong of the **Brady** analysis, Appellant asserts that the documents in question were favorable to him because he would have used

them to impeach the victim's credibility and to illustrate her prior refusal to cooperate with the Commonwealth. *Id.* at 23-24. With respect to the second prong, Appellant contends that the Commonwealth was "certainly aware" that Mr. Thompson had been previously arrested for assaulting the victim and of the reason for dismissing the case against Mr. Thompson. *Id.* at 24. Finally, in support of the third prong, Appellant speculates that suppression of this evidence prejudiced him because had the Commonwealth turned over the evidence and the court had permitted Appellant to use it to undermine the victim's credibility, "there is a substantial possibility that the factfinder would have credited [Appellant's] version of events rather than [the victim's]." *Id.* at 25.

Following our *de novo* review of the record, we conclude that no ***Brady*** violation took place. First, we observe that the record belies Appellant's claim that the Commonwealth suppressed evidence of Mr. Thompson's criminal record. Instead, the record reflects that Appellant was aware of Mr. Thompson's arrest and had in his possession at the time of trial the affidavit of probable cause; in fact, it was that affidavit of probable cause that Appellant sought to introduce as evidence. Appellant has not indicated what, if any, additional evidence he sought in discovery the Commonwealth allegedly withheld. It is also evident that Appellant was aware of Mr. Thompson's criminal record as he acknowledged in his post-sentence motion that, four months prior to the trial in this matter, the Defender Association was

"removed as counsel" from two cases in which Mr. Thompson was the defendant.

Even if the Commonwealth had withheld Mr. Thompson's criminal record, that record is not exculpatory as to Appellant because Mr. Thompson's criminal history is not related to the charges against Appellant. Moreover, even if the court had permitted Appellant to impeach the victim's credibility with Mr. Thompson's criminal record, Appellant's claim that the Commonwealth's alleged suppression of it prejudiced him is no more than mere speculation, particularly in light of Appellant's own admission at trial that he swore at the victim and prevented her from opening and closing her front door. We agree with the trial court—who sat as the trier of fact charged with the responsibility of weighing the credibility of the witnesses—when it found that, "[e]ven if all of this evidence was passed to [Appellant], none of this information would absolve him of his present charges." Trial Ct. Op. at 11.

For the foregoing reasons, we find Appellant's claim that the Commonwealth committed a **Brady** violation meritless. Appellant is, thus, not entitled to relief.

Having found both of Appellant's claims lacking merit, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 4/3/2025