J-A22011-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRIAN JULIAN MARCHINI | : | |
| | : | |
| Appellant | : | No. 349 EDA 2024 |

Appeal from the Judgment of Sentence Entered August 25, 2023
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0000902-2021

BEFORE:   LAZARUS, P.J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, P.J.:                    **FILED JUNE 3, 2026**

Brian Julian Marchini appeals from the judgment of sentence,[1] entered

in the Court of Common Pleas of Montgomery County, following his convictions

of four counts of rape of a child,[2] three counts of involuntary deviate sexual

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Although Marchini filed his notice of appeal from the December 21, 2023 order denying post-sentence motions, we have amended the caption to reflect that the appeal is technically taken from the judgment of sentence.  **_See Commonwealth v. Chamberlain_**, 658 A.2d 395 (Pa. Super. 1995) (order denying post-sentence motion acts to finalize judgment of sentence; thus, appeal is taken from judgment of sentence, not order denying post-sentence motion).

[2] **_See_** 18 Pa.C.S.A. § 3121(c).

intercourse with a child,[3] seven counts of false imprisonment,[4] ten counts of indecent assault of a complainant less than thirteen years of age,[5] and one count each of indecent exposure,[6] unlawful contact with a minor,[7] corruption of minors,[8] aggravated indecent assault of a child less than 13 years of age,[9] and endangering the welfare of children—course of conduct.[10]  After careful review, we vacate and remand with instructions.

The trial court summarized the facts of this case as follows:

Between 2000 and 2003, [Marchini] engaged in sexual acts on multiple occasions with his daughter ([A.M.]) when she ranged in age from five [] to seven [] years old.  [Marchini] and [A.M.]'s mother separated when [A.M.] was approximately five [] years old and possessed split physical custody of [A.M.] following the separation.  [Marchini]'s initial custodial periods with [A.M.] took place in a home in Telford[] in Bucks County and [A.M.] would typically reside in the residence for a couple days a week, most often during weekends.  During one of these custodial periods, [Marchini] began to lie on top of [A.M.] and rub his body against her.  [A.M.] was lying with her face down on the floor and was not wearing any clothes.  [Marchini] was not wearing pants or underwear during this encounter and proceeded to rub his erect

_____

[3] *Id.* at § 3123(b).

[4] *Id.* at § 2903(c).

[5] *Id.* at § 3126(a)(7).

[6] *Id.* at § 3127(a).

[7] *Id.* at § 6318(a)(1).

[8] *Id.* at § 6301(a)(1).

[9] *Id.* at § 3125(a)(7).

[10] *Id.* at § 4304(a).

penis on [A.M.]'s butt crack. [A.M.] wanted to get away but was not able to escape due to the full weight of [Marchini]'s body acting as a restraint.

A short time later, during another one of [Marchini]'s custodial periods in the Telford residence, [Marchini] placed [A.M.] on the floor, but this time positioned her so that she was laying on her back. [Marchini] and [A.M.] were both naked and [Marchini] proceeded to rub his penis against [A.M.]'s vagina without engaging in penetration. [Marchini]'s weight again acted as a restraint and did not allow [A.M.] to move during this encounter.

[Marchini] subsequently moved to Perkasie[]in Bucks County in 2001 to live with his parents. [Marchini]'s brother also lived in the residence. [Marchini] continued to maintain split custody of [A.M.] with her mother, and [A.M.] resided in the Perkasie residence a few days a week. During the custodial periods in Perkasie, [Marchini] began introducing nicknames for the sexual acts he wanted to engage in with [A.M.]. Specifically, [Marchini] labeled the act of rubbing his penis along [A.M.]'s butt crack as a "butt slide." [Marchini] labeled oral sex with [A.M.] as "loll[i]pop" and branded vaginal intercourse with penetration as "in and out."

[Marchini]'s first sexual encounter with [A.M.] while in the Perkasie residence involved [Marchini] positioning [A.M.] on her stomach and rubbing his penis on her butt crack while they were both naked. [A.M.] was not able to move during this incident due to [Marchini] placing all of his weight on [A.M.]'s body. [Marchini] instructed [A.M.] not to tell anyone what had occurred.

Towards the conclusion of [Marchini]'s time residing in the Perkasie residence, he forced [A.M.] to allow him to penetrate her vagina with his penis. [A.M.] indicated that the pain was significant and [Marchini] stopped the act after two (2) seconds due to her screams. The encounter subsequently progressed into a "butt slide" in which [Marchini] rubbed his penis against [A.M.]'s butt crack.

During [Marchini]'s time residing in the Perkasie residence, he also forced [A.M.] to engage in sexual activity in his car while parked inside a mall parking garage. [A.M.]'s brother was seated in the back seat of the car and [Marchini] placed a trench coat over his head so that he could not observe what was happening. [Marchini] had begun to engage in a system of bargaining with [A.M.] at this time in an attempt to induce her to submit to his sexual advances. During this particular event, [Marchini]

indicated that he would take [A.M.] to McDonald's if she would participate in the "lollipop" act. [A.M.] refused to perform "lollipop" and instead engaged in the "butt slide" act. [A.M.] was not dressed during this encounter and [Marchini]'s pants and underwear had been removed. [Marchini] placed [A.M.]'s body over the console and positioned himself on top of [A.M.]. Following the act, [Marchini] instructed [A.M.] to keep it a secret.

[Marchini] subsequently moved to an apartment in Lansdale[] in Montgomery County when [A.M.] was approximately seven [] years old. [Marchini] continued to maintain split custody of [A.M.] with her mother. While in the Lansdale residence, [Marchini] offered to take [A.M.] to McDonald's if she performed the "lollipop" act and she agreed to the proposal. [A.M.] was afraid [Marchini] would urinate into her mouth, but [Marchini] promised this wouldn't happen. [Marchini] proceeded to place his penis into [A.M.]'s mouth and [A.M.] remembered some type of liquid being emitted into her mouth during the encounter which she hypothesized may have been semen.

On another occasion while [Marchini] was living in the Lansdale residence, [Marchini] took [A.M.] and her brother to a local laundromat[,] where he had both children enter into a bathroom with him in the back of the business. [Marchini] moved [A.M.] away from her brother so that she was not within his hearing distance and asked [A.M.] to perform the "lollipop" act. [A.M.] responded that she did not want to due to [Marchini]'s broken promise regarding his act of urinating into her mouth. [Marchini] promised that he would not urinate and [A.M.] agreed to perform the "lollipop" act. [Marchini] proceeded to place his penis into [A.M.]'s mouth but [A.M.] could not recall if [Marchini] had any sort of discharge into her mouth during this encounter.

During another encounter in the Lansdale residence, while sitting in his bedroom with [A.M.], [Marchini] attempted to remove [A.M.]'s shirt, but she resisted and tried to run for the door to exit the room. When [A.M.] reached for the doorknob, [Marchini] grabbed her, pulled [A.M.] onto his bed and engaged in the "butt slide" act. In another encounter in the Lansdale residence, [A.M.] recalled [Marchini] positioned her so that she was [lying] on her back and proceeded to rub his penis against [A.M.]'s vagina without engaging in penetration.

In one of the final encounters at the Lansdale residence, [A.M.] was seated in the bedroom with [Marchini] and tried to escape to

the door when he started making advances. [Marchini] grabbed [A.M.] before she made it to the door and offered her a trip to Disney World if she would do what he asked. [Marchini] proceeded to instruct [A.M.] to perform the "butt slide" act and she complied. Following this encounter, [Marchini] threatened [A.M.] that that if she were to tell anyone what had happened, she would "never see him again." [A.M.] believed [Marchini]'s statement and said that she would not tell anyone what transpired. In 2013, when [A.M.] was seventeen [] or eighteen [] years old, she informed Richard Butterworth, a man she was dating, about the sexual abuse she endured from [Marchini]. [] Butterworth did not report [A.M.]'s statements to anyone.

In November 2020, [A.M.] reported [Marchini]'s sexual abuse to the Lansdale Police Department. As part of the investigation, [A.M.] agreed to allow authorities to record a phone call she conducted with [Marchini]. During this phone call, which occurred on November 21, 2020, [A.M.] asked [Marchini] for resolution as to how she was "in a relationship" with him when she was younger and [Marchini] responded how he was "depressed" at the time. [A.M.] inquired whether [Marchini] believed what he did was right and [Marchini] responded that he "made a lot of mistakes." When [A.M.] questioned [Marchini] about whether he remembered any of his past actions, he responded that he would "try not to."

Authorities filed a criminal complaint on January 4, 2021, and later arrested Marchini on January 7, 2021.

Trial Court Opinion, 11/25/24, at 1-4.

On March 8, 2023, Marchini filed a motion to admit statements regarding A.M.'s prior sexual conduct. Specifically, Marchini requested the admission of a September 10, 2013 Facebook message between A.M. and Marchini in which she advised that "on June 3[,] I lost my virginity to Ricky." Appellant's Pre-Trial Motion, 3/8/23, at 1, 4 (unpaginated). On March 10, 2023, following argument, the trial court denied the motion on the grounds that its admission

would violate the Rape Shield Law[11] and that the statement constituted hearsay. *See* Trial Court Opinion, 11/25/24, at 36, 36, n.4.

A jury trial was held from March 14 through March 15, 2023. Following closing argument, but prior to jury deliberation, defense counsel made a motion for judgment of acquittal, asserting that, while the charges encompassed crimes committed in both Bucks County and Montgomery County, the bills of information only referenced Montgomery County as the location in which the crimes occurred. *See* N.T. Jury Trial, 3/15/23, at 170. Defense counsel argued that the bills of information was controlling as "it's a document prepared by the government putting the . . . defendant on notice as to what the crimes are and what the elements are and put Montgomery/Bucks there. It says [only] Montgomery County." *Id.* at 170-71. The trial court denied the motion. *Id.* On March 15, 2023, Marchini was convicted of the above-mentioned charges. The trial court deferred sentencing and ordered a pre-sentence investigation report, directed the Sexual Offenders Assessment Board to conduct a sexually violent predator (SVP) assessment, and, upon specific request by the Commonwealth, ordered a psychosexual evaluation. *Id.* at 219-20.

_____

[11] *See* 18 Pa.C.S.A. § 3104(a). The Rape Shield Law was enacted "to prevent irrelevant testimony relating to the victim's past involvement in sexual activities from being presented to the trier of fact in order to protect the victim from being prejudiced because of unwarranted perception as to her moral character rather than based on the facts of the case." *Commonwealth v. Riley*, 643 A.2d 1090, 1093 (Pa. 1994).

A sentencing hearing was held on August 25, 2024. At the beginning of the sentencing hearing, defense counsel renewed his challenge to the bills of information by presenting an "oral motion of extraordinary relief." N.T. Sentencing Hearing, 8/25/23, at 4. Defense counsel argued that "this is not a jurisdiction argument. This is not a venue argument. This is not a notice argument. [Marchini] simply was not charged with any crime within Bucks County." *Id.* at 5. In response, the Commonwealth made an oral motion to amend the bills of information to add the words "Bucks County" to the introductory paragraph, which the trial court granted. *Id.* at 8. In support of its position, the Commonwealth introduced the following: (1) the criminal complaint, which outlined the charges in both Montgomery and Bucks Counties; (2) the transcript from the preliminary hearing where the Commonwealth went through all of the Bucks County charges; and (3) a *McPhail*[12] letter, indicating that the Bucks County District Attorney's Office agreed to allow the Montgomery County District Attorney's Office to prosecute Marchini for the crimes that occurred in Bucks County. *Id.* at 9.

_____

[12] *See Commonwealth v. McPhail*, 692 A.2d 139 (Pa. 1997) (plurality), *superseded by statute*, Act of June 28, 2002, P.L. 481, No. 81, § 1. Although *McPhail* has since been superseded by statute, the term is still commonly used to describe the written agreement permitting joinder of certain criminal charges against the same defendant arising out of acts committed in multiple counties. *See* Pa.R.Crim.P. 130(a)(3) (permitting charges arising from same criminal episode in more than one judicial district to be brought before one issuing authority within any of judicial districts in which charges arose); *see also* Pa.R.Crim.P. 555 (addressing transfer of proceedings in "cases in which charges arising from a single criminal episode occur in more than one judicial district").

On August 25, 2023, the trial court imposed an aggregate sentence of sixteen to thirty-two years imprisonment. On the same date, the trial court found Marchini to be an SVP pursuant to 42 Pa.C.S.A. § 9799.58 and ordered Marchini be subject to lifetime registration under 42 Pa.C.S.A. § 9799.55 of subchapter 1 of the Sex Offender Registration and Notification Act, 34 U.S.C. §§ 20901, et seq.

On September 1, 2023, Marchini filed a post-sentence motion, and, upon requesting and receiving the trial court's permission, filed a supplemental post-sentence motion on November 30, 2023,[13] in which he raised, among other issues, a weight of the evidence claim. The trial court denied both motions on December 21, 2023.

Marchini filed a timely notice of appeal. Both Marchini and the trial court complied with Pa.R.A.P. 1925. Marchini raises the following issues on appeal:

1. Whether the trial court should have granted the judgment of acquittal due to a defective criminal information [that] was not amended until after the trial and verdict.

2. Whether the evidence was insufficient to support the verdict as there were no crimes in Bucks County[] charged in the criminal information.

3. Whether the trial court erred in denying [Marchini]'s motion to admit statements regarding [A.M.]'s prior sexual conduct.

4. Whether the verdict was against the weight of the evidence.

---

[13] *See* Pa.R.Crim.P. 720 (b)(1)(b) ("[D]efendant may file supplemental post-sentence motion in the judge's discretion as long as the decision on the supplemental motion can be made in compliance with the time limits of paragraph (b)(3).").

Appellant's Brief, at 3 (reordered for ease of review).

Marchini's first two issues involve the criminal information. The criminal information "is a formal written statement charging the commission of an offense signed and presented to the court by the attorney for the Commonwealth after a defendant is held for court[.]" Pa.R.Crim.P. 103. The information apprises the defendant of the charges filed so he can prepare a defense. **Commonwealth v. Sinclair**, 897 A.2d 1218, 1223 (Pa. Super. 2006).

In his first issue, Marchini argues that the trial court erred in denying his motion for judgment of acquittal because the bills of information did not include Bucks County, which is the county in which several of the crimes were alleged to have occurred. **See** Appellant's Brief, at 19-20. He then contends that the bills of information were improperly amended after the verdict. **Id.** at 16-19.

In a related argument, Marchini claims that there was insufficient evidence for the jury to find that all of the convictions occurred in Montgomery County as charged in the criminal information because some of Marchini's crimes occurred in Bucks County and the criminal information did not include Bucks County. **See** Appellant's Brief, at 9-10. While Marchini frames this claim as a sufficiency challenge, he is in fact asserting that there is a defect in the criminal information. **See Commonwealth v. Raymond**, 233 A.3d 809, 814 (Pa. Super. 2020) (stating argument appellant erroneously charged under wrong subsection of criminal statute does not raise challenge to

sufficiency of evidence but instead raises claim criminal information defective).

Therefore, we will review Marchini's first two issues together, as both issues ultimately contend that the criminal information was defective by failing to include the location of Bucks County. Marchini argues that the verdict cannot be sustained, as the crimes occurring in Bucks County were not officially charged, and amendment after trial was improper. *See* Appellant's Brief, at 9-10; 16-20. Marchini's challenge to the trial court's denial of his motion seeking judgment of acquittal raises a question of law. ***Commonwealth v. Butler***, 333 A.3d 1283, 1286 (Pa. Super. 2025). Accordingly, "our standard of review of an order denying a motion for judgment of acquittal is *de novo* and our scope of review is plenary." ***Id.***

Pennsylvania Rule of Criminal Procedure 560 requires a criminal information charging a defendant to include "the county where the offense is alleged to have been committed[.]" Pa.R.C.P. 560(4). However, it should be noted that "an information is not to be read in an overly technical form. Thus, we will arrest judgment only when an error misleads a defendant as to the charges against him, precludes him from anticipating the Commonwealth's proof, or impairs a substantial right." ***Commonwealth v. Morales***, 669 A.2d 1003, 1006 (Pa. Super. 1996). "A criminal information is not constitutionally infirm if it notified the defendant of the crime with which he is charged." ***Commonwealth v. Demulter***, 314 A.3d 934, 940 (Pa. Super. 2024) (citation omitted).

Pennsylvania Rule of Criminal Procedure 564 permits the amendment of the information "when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense." Pa.R.Crim.P. 564. "We review a trial court's decision to grant or deny a motion to amend an information for an abuse of discretion." *Commonwealth v. Sandoval*, 266 A.3d 1098, 1101 (Pa. Super. 2021). "[T]he purpose of Rule 564 is to ensure that a defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last[-]minute addition of alleged criminal acts of which the defendant is uninformed." *Sinclair*, 897 A.2d at 1221 (citation omitted). When presented with a question concerning the propriety of an amendment, we consider:

> [w]hether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted.

*Commonwealth v. Jackson*, 215 A.3d 972, 979-80 (Pa. Super. 2019) (internal citations omitted). Additionally,

> [i]n reviewing a grant to amend an information, the Court will look to whether the appellant was fully apprised of the factual scenario which supports the charges against him. Where the crimes specified in the original information involved the same [] elements and arose out of the same factual situation as the crime added by the amendment, the appellant is deemed to have been on notice

regarding his alleged criminal conduct and no prejudice to defendant results.

***Commonwealth v. Mentzer***, 18 A.3d 1200, 1202-03 (Pa. Super. 2011), quoting ***Sinclair***, 897 A.2d at 1222. Factors for a court to consider in determining the existence of prejudice include:

> (1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

***Mentzer***, 18 A.3d at 1203 (internal citation omitted).

In ***Mentzer***, the defendant was charged, by criminal information, with driving under the influence (DUI), general impairment, which was graded as a first offense, ungraded misdemeanor. ***Id.*** at 1201. Following a jury trial, the defendant was found guilty of the offense and sentencing was scheduled. However, prior to sentencing, the Commonwealth was notified that the defendant had a prior DUI in the State of Maryland. The Commonwealth moved to amend the criminal information at the time of sentencing, which would then classify the defendant's DUI conviction as a second offense, graded as a misdemeanor of the first degree. Ultimately, this Court found that the amendment was proper in light of the totality of the circumstances discovered prior to sentencing. ***Id.*** at 1204. Even though the amendment increased the grading of the defendant's offense, the Court found that the defendant was

not prejudiced when he was aware he had a prior DUI and the sentence was

fair and appropriate. *Id.*

Here, the trial court made the following determination:

[Marchini]'s argument is misplaced. The bills of information are intended to inform a defendant of the charges against him and if they are instead viewed in accordance with [Marchini]'s interpretation, any minor error contained within the bills could effectively function as a "get out of jail free card." *See Morales*, *supra*. The situation in the instant matter closely mirrors the factual scenario presented in *Commonwealth v. Witmayer*, 144 A.3d 939 (Pa. Super. 2016)[]. In *Witmayer*, the defendant was charged with engaging in sexual abuse in both Montgomery and Chester Counties. The Montgomery County District Attorney's Office prosecuted the matter and initially only listed Montgomery County in the bills of information. On the eve of trial, the Commonwealth moved to amend the information to include Chester County in the bills, which it maintained was mistakenly absent from the original bills. The court granted the motion[,] and the defendant challenged this ruling on appeal by claiming he was prejudiced by the amendment. The Pennsylvania Superior Court disagreed, stating "[t]he amendment merely added the phrase 'County of Chester,' to the information. It did not add any new facts or charges of which [the] defendant was previously unaware. Both the criminal complaint and affidavit of probable cause detailed acts of abuse occurring in both Chester County and Montgomery County. Thus, the trial court agreed with the Commonwealth that the missing phrase was merely a defect in form. The fact that [the defendant] leveled pretrial attacks on the prosecution of the charges committed in Chester County is a clear indication that he was both aware of and preparing a defense against those charges." *Id.* at 947-48.

Here, as in *Witmayer*, the Commonwealth mistakenly did not include "County of Bucks" in the original bills of information, but [Marchini] was fully aware of the events [that] occurred in Bucks County. Specifically, the criminal complaint (introduced as Commonwealth Exhibit C-1 during argument on [Marchini]'s Motion for Extraordinary Relief) referenced all of the Bucks County incidents. The transcript from the preliminary hearing (introduced as Commonwealth Exhibit C-2 during argument on [Marchini]'s Motion for Extraordinary Relief) also demonstrates each of the

Bucks County incidents were referenced by the Commonwealth from the beginning of its prosecution of this matter. [Marchini] also leveled multiple pretrial attacks on all of the Bucks County charges which indicated he was both aware of and preparing a defense against the charges. The Commonwealth's amendment also did not change the factual scenario underlying the charges. *See Mentzer*, *supra*. Additionally, considering the defense in this matter involved the claim that [Marchini] did not commit any of the offenses, the defense strategy was unaffected by the amendment. Accordingly, [Marchini] suffered no prejudice from the amendment to the bills of information. *See Jackson*, *supra*. To the extent [Marchini] claims that the Commonwealth was required to amend the bills of information prior to verdict, the Superior Court in *Mentzer* held that an amendment sought and granted after trial[,] but before sentencing[,] is permissible. *See id.*

Trial Court Opinion, 11/25/24, at 17.

After a thorough review of the record, the briefs of the parties, and the applicable law, we agree with the trial court's above-explained determination that Marchini was not prejudiced by the amendment when he was clearly aware of the charges brought against him and the amendment did not change the factual scenario of the underlying charges.[14] *See Mentzer*, *supra*. Therefore, the absence of the words "County of Bucks" being included in the original bills of information was not a fatal defect and Marchini fails to show

---

[14] In Marchini's argument that the trial court erred in amending the criminal information after the verdict, Marchini relies on our decision in *Commonwealth v. Yacobucci*, 258 A.3d 557 (Table) (Pa. Super. 2021) (unpublished memorandum), which stated that "courts do not have the authority to alter a verdict after trial to find a defendant guilty of an offense for which he was not tried." *Id.* at *7. However, in *Yacobucci*, the amendment of the information after the verdict changed defendant's conviction into an entirely new crime. *Id.* at *4-5. This is unlike the instant case, which the amendment only added a location of some of the crimes already listed in the bills of information.

- 14 -

that he suffered prejudice from the amendment to the bills of information.

***See Jackson***, ***supra***. Accordingly, Marchini's first and second claims fail.

In his third issue on appeal, Marchini argues that the trial court erred by failing to have an in-camera hearing regarding A.M.'s Facebook message to Marchini about her losing her virginity to "Ricky." ***See*** Appellant's Brief, at 13-16.

Our standard of review for admission of evidence of a victim's prior sexual conduct is as follows:

> [A] trial court's ruling on the admissibility of a sexual abuse victim's prior sexual conduct will be reversed only where there has been a clear abuse of discretion. []***K.S.F.***, 102 A.3d [at] 483[]. "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused." ***Id.*** (citation and quotation marks omitted).

***Commonwealth v. Largaespada***, 184 A.3d 1002, 1006 (Pa. Super. 2018).

The Rape Shield Law states:

> **(a) General rule.**--Evidence of specific instances of the alleged victim's past sexual conduct, past sexual victimization, allegations of past sexual victimization, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions of any offense listed in subsection (c) except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

18 Pa.C.S.A § 3104(a). The purpose of the Rape Shield Statute "is intended to exclude irrelevant and abusive inquiries regarding prior sexual conduct of

- 15 -

sexual assault complainants." ***Commonwealth v. Burns***, 988 A.2d 684, 689 (Pa. Super. 2009) (en banc) (citation omitted). While the statute refers to "specific instances of the alleged victim's past sexual conduct," this Court has stated that the statute also applies to preclude evidence of a **lack** of sexual conduct. ***Burns***, 988 A.2d at 689 n.4.

This Court has recognized several exceptions to the general prohibition against the admission of evidence of victim's prior sexual conduct, in an effort "to reconcile the effect of the statute in excluding evidence with the accused's [S]ixth [A]mendment right to confrontation and cross-examination." ***Largaespada***, 184 A.3d at 1007 (Pa. Super. 2018) (citations omitted).

> Established exceptions include **evidence that negates directly the act of intercourse with which a defendant is charged**, evidence demonstrating a witness' bias, or evidence that attacks credibility. Notably, evidence tending to directly exculpate the accused by showing that the alleged victim is biased and[,] thus[,] has a motive to lie, fabricate, or seek retribution is admissible at trial.

***Id.*** (emphasis added).

A defendant wishing to introduce evidence of a victim's prior sexual conduct must initially provide "a specific proffer of exactly what evidence he or she seeks to admit and precisely why it is relevant to the defense." ***Burns***, 988 A.2d at 691; ***see also*** 18 Pa.C.S.A. § 3104(b) ("A defendant who proposes to offer evidence of the alleged victim's past sexual conduct . . . shall file a written motion and offer of proof at the time of trial."). Thereafter, "the trial court must determine if the proffered reason for introduction of past sexual conduct evidence is mere speculation or conjecture. If the proffered

evidence is not speculation or conjecture, the trial court must conduct an in[-]camera hearing." ***Commonwealth v. Palmore***, 195 A.3d 291, 295 (Pa. Super. 2018) (citations omitted); ***see also*** 18 Pa.C.S.A. § 3104(b) ("If, at the time of trial, the court determines that the motion and offer of proof are sufficient on their faces, the court shall order an in[-]camera hearing[.]").

Here, both the trial court and Marchini rely on ***Commonwealth v. K.S.F.***, 102 A.3d 480 (Pa. Super. 2014), to support their argument as to why the in-camera hearing was or was not required. ***See*** Trial Court Opinion, 11/25/24, at 36-38; ***see also*** Appellant's Brief, at 14-16. In ***K.S.F.***, the victim alleged that her stepfather had sexually abused her. The defendant sought to introduce evidence of the victim's Facebook profile in which she described herself as a "virgin." ***K.S.F.***, 102 A3d at 480. The trial court denied admission of the statements, concluding that the statement was inadmissible under the Rape Shield Law and had little probative value. On direct appeal, this Court vacated and remanded, instructing the trial court to hold an in-camera hearing and apply the three-prong balancing test outlined in ***Commonwealth v. Black***, 487 A.2d 396, 401 (Pa. Super. 1985), after which the trial court could grant a new trial or reinstate the judgment of sentence. Following the in-camera hearing, in which the trial court found the statement inadmissible and reinstated the defendant's judgment of sentence, the defendant filed another appeal. This Court reversed the trial court's decision and remanded for a new trial, finding the "virgin" statement admissible because it was relevant, highly probative, and extremely significant to the defendant's ability to impeach the

- 17 -

victim on her accusations of sexual abuse. *Id.* at 485-86 ("[N]othing was as significant as [the victim]'s explicit statement that the very acts that were at the heart of the prosecution in fact may never have occurred.").

Instantly, the trial court, attempting to distinguish the instant case from *K.S.F.*, found that, where the recording of the phone call between Marchini and A.M. "essentially constituted an admission by [Marchini] that he sexually abused [A.M.,]" A.M.'s credibility, while important, was not a critical issue. Trial Court Opinion, 11/25/24, at 38-39. Thus, the trial court concluded that A.M.'s Facebook message referencing her virginity was not so highly probative of her credibility that its absence deprived Marchini of a fair trial. *Id.* Further, the trial court noted that its decision did not prejudice Marchini and, at most, constituted harmless error. *Id.* at 39.

Upon our review of the record and relevant case law, we disagree and are constrained to conclude that the trial court erred by failing to hold an in-camera hearing on the proffered evidence. Here, Marchini presented alleged Facebook messages between him and A.M., including a message regarding A.M. losing her virginity to another person years after the alleged sexual assaults by Marchini, which were alleged to have included at least one act of vaginal penetration. Defense counsel also made a specific written proffer to the trial court, stating: "[A.M.'s] statement is essential to the defense case in that not only does it affect her credibility[,] but it also serves to negate an

element of one or more of the offenses charged: Rape of a Child (F1)."[15] Appellant's Pre-Trial Motion, 3/8/23, at 2-3 (unpaginated). As it relates to rape of a child, Marchini was accused of vaginally penetrating the victim, in addition to intercourse per os. Further, Marchini was also convicted of one count of aggravated indecent assault of a child, which crime also includes the required element of "penetration, however slight, of the genitals or anus of a complainant with a part of the person's body[.]" 18 Pa.C.S.A. § 3125(a). Thus, we conclude that the Facebook message between A.M. and Marchini about A.M.'s virginity may be admissible despite the Rape Shield Law, as it contradicts A.M.'s testimony and could be used to attack her credibility. *See K.S.F.*, *supra*. *Cf. Commonwealth v. Fernandez-Ramos*, 305 A.3d 999,*6-8 (Pa Super. 2023) (Table)[16] (in-camera hearing not required when defendant's offer of proof was insufficient where defendant sought to introduce Snapchat messages regarding abuse of victim by third party, but failed to argue how messages exonerated him or negated act with which he was charged).

---

[15] "A person commits the offense of rape of a child . . . when the person engages in sexual intercourse with a complainant who is less than 13 years of age." 18 Pa.C.S.A. § 3121(c). Also relevant, "sexual intercourse" is defined to include "[i]n addition to its ordinary meaning, includes intercourse per os or per anus, with some penetration however slight; emission is not required." *Id.* at § 3101.

[16] *See* Pa.R.A.P. 126(a)-(b) (unpublished, non-precedential memorandums of this Court, filed after May 1, 2019, may be cited for persuasive value).

We are also unconvinced by the trial court's determination that the recorded phone call between A.M. and Marchini is sufficient evidence to "remove this matter from the realm of a 'he said-she said' case."[17] Trial Court Opinion, 11/25/24, at 38. While we acknowledge that, unlike **K.S.F.**, the instant case contained evidence other than direct testimony, i.e. the recorded phone call, we do not find it to be so overwhelming that it would permit Marchini to be potentially deprived of his Sixth Amendment rights without proper examination of the proffered evidence at an in-camera hearing. **See Largaespada**, **supra**; **Commonwealth v. Holder**, 815 A.2d 1115, 1119 n.1 (Pa. Super. 2003) ("[T]he Rape Shield Law may not be used to exclude relevant evidence showing witness[] bias or attacking [a witness'] credibility."). Further, while some portions of the recorded phone call may be incriminating, when taken as a whole, we do not believe it constitutes such an admission of guilt by Marchini for all the crimes charged that A.M.'s credibility was not, at the minimum, a relevant issue. **See** Transcript of Recorded Phone Call Between A.M. and B.M., 11/21/20, at 3 (AM: ". . . Do you remember any

---

[17] In distinguishing **K.S.F.**, the trial court cites to **Commonwealth v. Morgan**, 2015 WL 9263617 (Pa. Super. 2015) (unpublished memorandum decision). However, because **Morgan** was issued prior to May 1, 2019, we may not consider it for purposes of persuasive value. **See** Pa.R.A.P. 126(b). Even if we were to do so, we find the trial court's reliance on **Morgan** misplaced. In **Morgan**, this Court determined that an in-camera hearing was unnecessary to determine whether to admit certain evidence under the Rape Shield Law when there was such overwhelming physical evidence, specifically "scores of photographs and videos portraying the victim engaging in sexual activity[,] found in [the defendant]'s possession[,]" that the victim's credibility was not a central issue. **Id.** at *8. As discussed above, we do not find the evidence to be as overwhelming as the evidence described in **Morgan**.

- 20 -

of the things we did?" BM: "No. Not really." AM: "But they did happen, right?" BM: "A lot of things happened. I mean, but—"); *id.* at 5-6 (AM: "Okay. Um, I remember that there was like, oral and I remember that there was just a lot of like, rubbing usually. Is that sort of what you remember?" BM: "Yeah. Maybe."); *id.* at 6-7 (BM: "And I could—I could never talk to anyone about this." AM: "Yeah, I couldn't either. I haven't." BM: "Well, yeah, I know. I mean for you, it's obviously one thing. And for me, well— there other, obviously significant consequences."); *id.* at 7 (AM: "Yeah. I just want to let you know that even after everything that happened after—I don't know. I don't even know what to call it—was it sex?" [] BM: "I don't— I don't think we can call it that because we—yeah."). Thus, Marchini's proffer was sufficient on its face and requires an in-camera hearing to determine its admissibility.[18] *See K.S.F.*, 102 A.3d at 485 ("The purpose of [an in[-]camera] hearing required by the Rape Shield Law is to enable a trial court to determine whether tendered defense evidence of the victim's prior sexual activity is relevant and admissible.") (quotation marks and citation omitted).

Accordingly, we vacate Marchini's judgment of sentence and remand to the trial court for an in-camera hearing to determine whether the Facebook

---

[18] The trial court also notes that the statement would be inadmissible as hearsay. *See* Trial Court Opinion, 11/25/24, at 36, n.4. While the evidence may or may not be hearsay, our determination here is only whether the proffered evidence is sufficient on its face to require the trial court to hold an in-camera hearing under the Rape Shield Law. *See Palmore*, *supra* ("If the proffered evidence is not speculation or conjecture, the trial court **must** conduct an in[-]camera hearing.") (emphasis added).

message is relevant and admissible, after which the trial court may grant a new trial or reinstate the judgment of sentence.[19]  ***See Commonwealth v. Ruggiano***, 26 A.3d 473, 473 (Pa. 2011) (per curiam).

Judgment of sentence vacated.  Remanded for further proceedings consistent with this memorandum.  Jurisdiction relinquished.

Stevens, P.J.E., joins this Memorandum.

Sullivan, J., Concurs in the Result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/3/2026

---

[19] Due to our disposition, we need not address Marchini's remaining claim.